Roger C. RUE and Nellie M. Thomas,
Plaintiffs-Appellants,

v.

Harold F. HELMKAMPF, et al.,
Defendants-Respondents.

No. 45620.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 23, 1983.

J.B. Carter, John H. Lamming, Clayton,
for plaintiffs-appellants.

Jane E. Leonard, Charles Alan Seigel, St.
Louis, for defendants-respondents.

PUDLOWSKI, Presiding Judge.

Plaintiffs appeal from a judgment entered upon the trial court's sustention of defendant's motion for summary judgment. We affirm.

The case involves the issue of the requirement for, and sufficiency of, consideration returned or tendered as a condition for setting aside or cancelling a contract of settlement and release.

The pleadings and affidavits establish the uncontroverted facts of the case. In the spring of 1977, the two plaintiffs individual-

ly and as sole stockholders, directors and officers of Big Bend Square, Inc., a Missouri corporation, entered into a business relationship with defendant for development of a real estate tract in St. Louis County into a shopping, office and residential center to be known as Big Bend Square. As part of the land development project, the parties jointly incurred indebtedness including three loans, notes and deeds of trust from sundry lenders and an employment contract with a law firm for legal services.

Escalating cost overruns and other serious disputes and financial problems developed. The original target date for completion of the project was September 1, 1978, but was extended several times to, finally, July 31, 1980. By letter of March 16, 1980, plaintiffs expressed to defendant their disquietude about their increasing substantial financial liabilities occasioned by the delays and their desire to withdraw from the project.

Complying with their wish, the defendants and plaintiffs met on April 4, 1980 and executed the Big Bend Square Settlement Agreement disposing of their financial differences and terminating their original business agreement for the real estate development project. The settlement agreement contained mutual promises and releases concerning the parties' respective rights, duties and obligations. Plaintiffs, on the one part, and defendant, on the other part, released each other "from each and every claim, right, action, and/or cause of action, known or unknown," each of them "may have against" the other "arising out of the purchase, financing, accounting, construction, development and leasing of the land and the improvements thereon and appurtenances thereto and all actions of" each of them "relative thereto" except the rights of each party arising under the provisions of the Settlement Agreement and the documents delivered to each party pursuant thereto. Under the terms of the settlement agreement, defendant released plaintiffs from personal liability in an approximate sum of $3,336,000 under all of the loan agreements and the legal employment contract, and defendant agreed to perform and assumed all of the obligations of plaintiffs relating to the real estate development. In return, plaintiffs conveyed to defendant by special warranty deed all their right, title, and interest in the real estáte development as well as the loan agreements and all other interests in the project.

Four months after executing the agreement, plaintiffs filed their four count petition in equity against defendant for damages, accounting, rescission and constructive trust. Count one alleged defendant delayed construction on the real estate project causing plaintiffs financial difficulties, and that defendant made false representations to them, thereby breaching their fiduciary business relationship. Count two alleged defendants' nondisclosure of financial records of the real estate project for which plaintiffs sought an accounting. Amended count three prayed for rescission of the deeds, assignment, and release executed by plaintiffs on April 4, 1980, on the grounds that the instruments were obtained fraudulently through coercion and undue influence by defendant. Count four requested imposition of a constructive trust to preclude defendants' unjust enrichment.

Plaintiffs raise several points on appeal. First, plaintiffs contend the trial court erred in rendering summary judgment for defendant because the pleadings and affidavits set forth a submissible case in presenting the following questions of material fact:

1) Whether defendant breached his duty to plaintiffs as a "partner" by withholding information concerning their "partnership's" financial status and by using superior knowledge and threats to coerce plaintiffs into divestiture of their business interests;

2) Whether the "partnership" attorney acted in concert with defendant in bringing about the divestiture by threatening them with financial ruin and not giving them an opportunity to consult another attorney;

3) Whether plaintiffs' wills were overborne by fear of financial loss;

4) Whether defendant intended, by representations concerning his role in the pro-

spective development, concealment of material information to coerce plaintiffs' exit from the project.

Second, plaintiffs state that their offer to do equity and tender back to defendant certain written instruments sufficed for the court in equity to supervise reformation and rescission of the written instruments and to adjudicate the parties' respective rights. They assert that the general rule at law requiring plaintiffs to tender back benefits received under an agreement as a prerequisite to plaintiffs' maintaining a cause of action is inapplicable in a court of equity where no tangible corpus or fund returnable to defendant exists and where the requirement of restoration of "status quo" would have the effect of indemnifying defendant for a *disputed* amount.

Defendant, on the other hand, posits that the restoration or tender of restoration is an essential condition to effect a rescission of the settlement release to permit plaintiffs to maintain their claim or cause of action in equity. Defendant asserts that plaintiffs' failure to tender back all benefits received under the settlement contract was fatal to plaintiffs' action, so that the judgment of the trial court should be affirmed.

Plaintiffs reply that the settlement agreement of April 4, 1980, did not bar absolutely their right to maintain their lawsuit against defendant theorizing that their offer to do equity in amended count three of their petition substantively indicated their willingness to make whatever restoration the court, in the exercise of its equitable powers, deemed necessary and proper.

We need not address plaintiffs' initial issue of whether or not they had adequately pleaded a cause of action against defendant for damages, accounting, rescission and constructive trust based on the allegedly fraudulent conduct of defendant so as to withstand summary judgment. Our concern at this point focuses on the dispositive issue of whether the existence of the settlement agreement constitutes a bar to plaintiffs' action. The settlement agreement squarely encompasses the issues within plaintiffs' petition. Neither side contends any of plaintiffs' claims are outside the purview of the agreement. Thus, absent a proper tender back by plaintiffs to defendant of the consideration received, the settlement agreement remains intact and bars plaintiffs' claims. Therefore, the crux of this appeal is the sufficiency of plaintiffs' tender.

■ We do not believe that the amended count three where plaintiffs merely allege that they "are willing to do equity and hereby tender and offer to deliver up to defendant the releases for the notes and deeds of trust" satisfies the requisite tender back of consideration received in order to maintain an action for cancellation of the contractual release which otherwise bars their lawsuit. Because we find plaintiffs' tender insufficient to cancel the settlement agreement barring plaintiffs' lawsuit, further consideration of plaintiffs' first point is unnecessary.

The general principle that one who seeks to avoid the effect of a release or a compromise of a claim, demand, or cause of action (whether in an action or proceeding brought solely to cancel or rescind the release or instrument of settlement, or in an action or proceeding brought primarily to enforce the original demand or cause of action, or in an action brought for the dual purpose of setting aside the release or settlement and recovering on the original claim or demand) must first return or tender the consideration, whether money or property paid him in connection with his execution of the settlement or release, has found application or recognition in a large number of cases involving the release or settlement of a wide variety of claims or demands. *Annot.,* 134 A.L.R. 6, 8–9 (1941). The principle enunciated above has been often recited by our Missouri courts. In the case of *Meisel v. Mueller,* 261 S.W.2d 526 [9–13] (Mo.App. 1953) *citing Thomas v. American Automobile Underwriters Agency,* 5 S.W.2d 660, 661[2] (Mo.App.1928), we said:

It is the general rule, applicable to *all contracts with the possible exception of insurance contracts,* that a party seeking the avoidance of his contract ab initio, either *at law* or *in equity, must tender*

the return of what he has received under it, even though the avoidance is sought on the ground of fraud. The rule is not founded on any solicitude for the fraud-feasor, but on the iniquity of allowing a party to repudiate his contract while holding onto the benefits received under it. (emphasis added).

See in this connection, 13 Am.Jur.2d Cancellation of Instruments § 37.

Plaintiffs cite *Reliable Life Insurance Co. v. Bell,* 246 S.W.2d 371 (Mo.App.1952) for the proposition that, in equity, the mere offer or tender back of consideration received satisfies the requirement of restoration of status quo as a condition precedent for maintaining an action to cancel a settlement or contract of release. Plaintiffs' reliance is misplaced, for we find that case unpersuasive and distinguishable from the case before us. *Reliable Life Insurance Co.* held that an *insurer* was not required to deposit premiums as a condition precedent to maintaining a suit in equity to cancel the insurance policy and that the insurer's only obligation was to offer to do equity; to offer to restore defendant as far as possible to the position occupied before the policies were taken out. *Id.* at 376[6]. The court found that, where the insurer in its petition tendered to defendant the full amount of the premiums collected on the policies, this tender was a sufficient offer to do equity as a condition to the relief sought. As iterated in *Meisel,* the general rule applies to *all* contracts, with the possible exception of insurance contracts. 261 S.W.2d at 534. *Reliable Life Insurance Co.,* as an insurance contract case, falls within the exception to the general rule and, hence, is inapposite to the case at bar. Furthermore, the plaintiff-insurer in *Reliable Life Insurance Co.* did, in fact, deposit with the court the full amount of the premiums collected from defendant on the insurance policies it sought to cancel. Defendant's complaint in *Reliable Life Insurance Co.,* was with the *mode* of plaintiff's tender because the insurance company deposited a check, instead of cash, and because the insurance company tendered the money to the court, instead of to plaintiff.

Plaintiffs concede in their briefs that tender is generally required but argue, citing *Schnurbusch v. Bohnert,* 395 S.W.2d 460 (Mo. banc 1965), that it is unnecessary where the court has the power to adjust the equities of the case and impose such terms as may be proper.

■■■ We do not take issue with plaintiffs' assertions that by invoking the equitable jurisdiction of a court to rescind and cancel instruments, the claimant indicates his willingness to make whatever restitution the case requires. *Osterberger v. Hites Const. Co.,* 599 S.W.2d 221, 230 (Mo.App. 1980). However, this rule does not dispense with the requirement of tender in cases to cancel instruments, i.e. to void a settlement contract of release. *See Meisel.* Nor does plaintiff fall within any of the exceptions which excuse restoration of the status quo. These exceptions include: where the restoration would be a vain or idle ceremony, *Jones v. McGonigle,* 327 Mo. 457, 37 S.W.2d 892, 896 (1931); where plaintiff was a minor when the contract was executed and no longer has the consideration within his possession, *Nelson v. Browning,* 391 S.W.2d 873, 877[5] (Mo.1965); where plaintiff suffers from mental incompetency of which the defendant is apprised, *State ex rel. United Mut. Ins. Assn. v. Shain,* 349 Mo. 460, 162 S.W.2d 255, 260[5] (Mo.1942); *Accord Schnurbusch.*

Plaintiffs' general offer in their pleadings is inadequate to restore the parties to the status quo.

The trial court properly evaluated plaintiffs' offer when it said in its order, in the amendment by interlineation to Count III which was filed after the motions for summary judgment had been briefed and argued, "Plaintiffs ambiguously stated that they were willing to do equity and to deliver certain releases to Defendant. It is not clear from the pleading what releases Plaintiffs were offering to deliver, but it is eminently clear that Plaintiffs were not offering: (1) to reinstate their personal liability to Tower Grove Bank and Trust Co. under the Loan Agreement, Notes, and Deeds of

Trust in the amount of $2,828,000; (2) to obtain a release by Tower Grove Bank & Trust Co. of Defendant's assumption of Plaintiffs' obligations to that institution; (3) to reinstate their personal liability to the Wotka lenders under the Loan Agreement, Note and Deed of Trust in the amount of $500,000; (4) to obtain a release by the Wotka lenders of Defendant's assumption of Plaintiffs' obligations to said lenders; (5) to reinstate their personal liability to Harold F. Helmkampf General Contractor Inc. for labor and materials furnished with respect to construction of improvements upon the aforesaid real estate development; (6) to obtain a release by Harold F. Helmkampf General Contractor, Inc. of Defendant's assumption of Plaintiffs' obligations to that company; (7) to reinstate their personal liability in the amount of $8,000 under an employment contract with Carter & Becker, P.C.; and (8) to obtain a release by Carter & Becker, P.C., of Defendant's assumption of Plaintiffs' obligations to that company. The ambiguous offer to 'do equity' falls far short of the requirement that Plaintiffs disgorge the benefits they received for the release contained in the Settlement Agreement. Plaintiffs may not retain the benefits of the Settlement Agreement and avoid its obligations."

We think it immaterial that the status quo cannot be literally restored, accepting plaintiffs' contention that certain claims are for unliquidated amounts. Whether the consideration received was a tangible corpus or fund does not mitigate the ability and duty of plaintiffs to reinstate their obligations which the settlement agreement released. By their failure to tender back clearly and precisely the benefits they received under the settlement agreement, plaintiffs struck their own death knell. There was no showing or offer by plaintiffs to accept or renew all their liabilities or guarantees on the debts of the real estate venture. This is supported by the fact that plaintiffs made no efforts to furnish satisfactory tender following the judge's initial order granting summary judgment and prior to his denial of their motion to vacate his order. When it appeared to all what the judge required of plaintiffs before he would possibly entertain their motion, plaintiffs still made no effort to comply by performing the requisite acts of tender. Our review of a summary judgment is equivalent to review of a court tried proceeding and if, as a matter of law, the judgment is sustainable on any theory it must be sustained. *Snowden v. Northwest Missouri State University,* 624 S.W.2d 161, 165[1] (Mo.App. 1981). Accordingly, judgment affirmed.

SMITH and KELLY, JJ., concur.