**SOUTHWESTERN BELL YELLOW PAGES, INC., Respondent,**

v.

**Bill H. DYE, d/b/a Dependable Plumbing, d/b/a Dependable Sewer Cleaners, and d/b/a B & G Plumbing Co., Appellant.**

No. 64066.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 19, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 16, 1994.

Anthony Kevin Conroy, St. Louis, for respondent.

Richard Alan Cooper, Danis & Boyce, St. Louis, for appellant.

SIMON, Presiding Judge.

Appellant, Bill H. Dye, appeals a summary judgment entered in favor of respondent, Southwestern Bell Yellow Pages, Inc., on his counterclaim for breach of contract, fraudulent representation, and negligent misrepresentation. On appeal, he contends the trial court erred in granting respondent summary judgment on the grounds that he had previously released respondent from those claims. We reverse and remand.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 74.04(c). The standard of review on appeal from a summary judgment was recently set out in *ITT Commercial Finance Corp. v. Mid–America*

*Marine Supply Corp.*, 854 S.W.2d 371, 376[1–3], [4–6] (Mo.banc 1993), where our Supreme Court stated:

> When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.
>
> Our review is essentially **de novo.** The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

(Citations omitted.)

Applying this standard, the record shows that in November, 1987, appellant filed a petition, cause number 568957, against respondent in the Circuit Court of St. Louis County for breach of contract, alleging that on or about January 6, 1987 appellant and respondent entered into a written contract "calling for the providing by [respondent] of certain advertising space in their directory for the agreed upon price of $8,005.25." Appellant's petition further alleged that respondent breached said contract by failing to provide said advertisements in the directory, and that, as a result of respondent's breach, appellant had suffered damages in the form of loss of business, profits, and reputation. The directory referred to in appellant's petition is the Southwestern Bell Yellow Pages ("Yellow Pages"), published around August of 1987 and current until the next publication around August of 1988. (For ease of reference, we shall refer to the 1987–88 yellow pages as the "first publication.") While appellant's suit regarding the first publication was pending, appellant and respondent entered into a contract regarding the placement of his advertisement in the Yellow Pages published around August of 1988 and current until August of 1989. (We shall refer to the 1988–89 Yellow Pages as the "second publication.") A dispute arose regarding the second publication as a direct result of respondent's alleged failure to live up to the oral representations of its employees made prior to the execution of the contract in April, 1988.

On March 14, 1989, a pre-trial conference was held on case number 568957, at which time the parties entered into a settlement agreement. The settlement agreement, handwritten by appellant's attorney, provided as follows:

> The parties stipulate and agree as follows:
>
> 1) [Respondent] shall pay to [appellant] the cash sum of $10,000 within ten (10) days.
>
> 2) [Respondent] shall credit [appellant] the sum of $15,000 on [appellant's] account.
>
> 3) [Respondent] shall pay all court costs including the costs of depositions previously taken.
>
> 4) [Appellant] shall release [respondent] from all claims arising out of advertising by [appellant] in the 1987 and 1988 St. Louis Yellow Pages.

Appellant was not present at the pre-trial conference, but his attorney contacted him by telephone, informed him of the terms of the settlement agreement, and appellant agreed to the terms as he understood them. The amounts set out in the settlement agreement were paid to appellant and have been retained by him.

On August 31, 1990, respondent filed a petition in the Circuit Court of the City of St. Louis for breach of contract, cause number 902–5508, and alleged damages for appellant's failure to pay for advertising which appellant bought in the second publication. Appellant answered respondent's petition pleading an affirmative defense, and counterclaimed on the same basis for damages resulting from respondent's alleged breach of contract (Count I), fraudulent representations (Count II), and negligent misrepresentation (Count III) with respect to the location

of appellant's advertisement in the second publication. Respondent moved for summary judgment on appellant's counterclaim on the grounds that the settlement agreement filed in case number 568957 released respondent from any claims arising out of appellant's advertising in both the first and second publications. Respondent also moved for summary judgment on its breach of contract claim. In support of its motion for summary judgment, respondent filed a copy of the settlement agreement and an affidavit of its attorney. Respondent's attorney stated in her affidavit, in pertinent part, that while appellant's lawsuit on the first publication was pending, respondent published the second publication and shortly thereafter appellant brought to her attention a separate complaint concerning the placement of his advertisement in the second publication; when appellant's former attorney drafted the settlement agreement, both she and appellant's former attorney were aware of appellant's complaints concerning both publications; in paragraph 4 of the settlement agreement drafted by appellant's former attorney, she and appellant's former attorney agreed on behalf of their respective clients that in consideration of respondent's payment of $10,000.00 cash and $15,000.00 credit to appellant's outstanding account balance on second publication, appellant released all of his claims against respondent for his advertising that appeared in both the first and second publications; and that the settlement agreement is not ambiguous.

The record reflects that appellant filed two affidavits in opposition to respondent's motion for summary judgment, his own and that of his former attorney. In his affidavit, appellant states the following: He was plaintiff in case number 568957 which brought a claim against respondent solely for problems which he sustained with the first publication; on March 14, 1989, a settlement proposal was discussed between his attorney and respondent's attorney, and his attorney called him by telephone that date and outlined the terms of the settlement proposal; he told his attorney that this agreement was approved provided that it dealt solely with his claim concerning the first publication; he was not present at court the day the proposal was discussed between his attorney and respondent's attorney because he had been misinformed as to the correct court date; his attorney was only tangently (sic) aware of the dispute that he had concerning the second publication which is the subject matter of this case; his attorney's knowledge was limited solely to knowing that he did have a dispute, and not the contents or substance of the dispute itself; he had not retained his attorney at any time up to and through March 14, 1989, nor did his attorney have any permission or authority up to and through March 14, 1989 to resolve or settle his dispute with respondent concerning the second publication; when the agreement was reached on March 14, 1989, it was his understanding and belief that it dealt with the first publication; in the process of pursuing the suit in case number 568957, some depositions were conducted at respondent's facility, after the depositions he told his attorney that he had a question to ask respondent's attorney which had nothing to do with the lawsuit his attorney was handling, and his attorney indicated he would step outside and let appellant talk with respondent's attorney privately; he asked respondent's attorney for a name and telephone number of someone appellant could talk to regarding a problem he had with respondent and respondent's attorney basically stated that she could not be of assistance.

By affidavit, appellant's former attorney stated that he was initially contacted by appellant in September of 1987 to represent appellant in connection with a dispute appellant had with respondent concerning the first publication; thereafter, appellant's attorney sent a letter, dated October 6, 1987, to respondent concerning his representation of appellant and appellant's complaints with respondent; on November 12, 1987, appellant's attorney filed a lawsuit in St. Louis County Circuit Court, bearing the case number 568957, which dealt solely with the contract for the first publication; while at a deposition concerning this litigation, taken at respondent's facility, appellant requested to have a conversation with either respondent's attorney or an employee of respondent; appellant indicated that the conversation he wanted to

have did not involve the matters for which appellant's attorney was representing him and, therefore, appellant requested that his attorney not be a party to the conversation; appellant's attorney never represented to respondent that he had any authority over any issue other than the issues raised in the lawsuit over the first publication; respondent knew or should have known of appellant's attorney's limitations of authority based upon the letter of October 6, 1987, the aforementioned lawsuit and appellant's conversation which took place in October of 1988; a pre-settlement conference was held at which appellant was not present and the only issues discussed were the issues raised as a result of the contract for the first publication as set forth in appellant's petition; at some point during the pre-settlement conference, respondent's attorney indicated that she wanted the release to include any damages appellant might have suffered in 1988 because his claim for damages included a portion of the calendar year 1988 since the directory in dispute ran through the majority of the calendar year of 1988; after verbally discussing the proposed settlement with respondent's attorney and the trial judge, appellant's attorney then placed a telephone call to appellant from the courthouse; appellant's attorney outlined to appellant the terms of the proposed settlement which appellant approved provided that it only dealt with the issues raised in the lawsuit concerning the first publication and the underlying contract; after relating the contents of his telephone conversation with appellant to respondent's attorney, appellant's attorney then wrote the settlement memorandum based upon conversations with respondent's attorney and appellant.

Pursuant to respondent's motion, the trial court entered judgment for respondent, finding that appellant released respondent from the claims asserted in his counterclaim. The trial court, reviewing the settlement agreement, found that (1) the settlement agreement was drafted by appellant's counsel; (2) the agreement is unambiguous with respect to the claims released by appellant, including all claims asserted by counterclaim and affirmative defense relating to the second publication; (3) the settlement agreement is not unconscionable or unreasonable; (4) appellant's "counsel of record in case number 595637 [sic] had clear apparent authority" to release appellant's claims relating to the second publication; (5) appellant's counsel of record had "express authority" to release appellant's claims relating to the second publication; (6) appellant "ratified this authority and is now estopped from denying it based on the express language of the settlement agreement, and [appellant's] acceptance of the benefits of the settlement agreement, including $10,000 cash and a $15,000 credit to [appellant's] account balance relating to [the second publication]." The trial court found that there is no genuine issue as to any material fact relating to appellant's counterclaim or affirmative defense, and that respondent is entitled to judgment as a matter of law on all counts of appellant's counterclaim. The trial court also granted summary judgment to respondent on its breach of contract claim. Appellant appeals only the judgment entered on his counterclaim.

Appellant's first point is essentially that the trial court erred in entering summary judgment against him on his counterclaim because the record reflects that his former attorney did not have apparent or express authority to settle an issue that was not raised in the previous lawsuit. He argues that his affidavit and his former attorney's affidavit raise a genuine issue as to the material fact of whether appellant's former attorney had authority to settle and release appellant's claims against respondent involving the second publication.

There is no implied authority for an attorney to compromise a client's claim. *Pettus v. Missouri Insurance Guaranty Association*, 731 S.W.2d 527, 529[1, 2] (Mo.App. 1987). Rather an attorney must have express authority from the client in order to bind that client to a compromise. *Id.* However, in cases where an attorney represents that he or she has authority from the client to accept a settlement offer, and did reach an agreement with the other party's counsel to settle, Missouri courts have placed a substantial burden on the client to disprove his own attorney's authority if the client wishes to avoid the settlement. *Rosenblum v. Jacks or*

*Better of America West, Inc.*, 745 S.W.2d 754, 761–62 (Mo.App.1988). "Only where the trier of fact has been convinced that authority to settle was truly lacking, or where the evidence has been deemed insufficient to raise the presumption of attorney authority, have our courts allowed clients to avoid or attempt to avoid settlements concluded by their attorneys." *Id.*, at 762. (Citations omitted.)

■ Here, the affidavits filed in opposition to respondent's motion for summary judgment state that appellant's former attorney had no authority to settle any claims appellant had against respondent regarding the second publication. Also, appellant's former attorney stated in his affidavit that he never represented to respondent that he had any authority over any issue other than the issues raised in the lawsuit regarding the first publication; that the only issues discussed at the settlement conference were the issues raised as a result of the first publication; that appellant, in a phone conversation with his former attorney, approved the terms of the settlement provided that it only dealt with the issues raised in the lawsuit concerning the first publication; and that the contents of this phone conversation were related to respondent's attorney before the settlement memorandum was written. The affidavits raise a genuine issue of fact as to whether appellant is bound by the action of his former attorney. Thus, respondent has failed to show that it is entitled to summary judgment as a matter of law.

Respondent argues, however, that regardless of whether appellant's former attorney had authority to release appellant's claims regarding the second publication, appellant has ratified and is estopped from denying his former attorney's authority based on his acceptance and retention of the benefits paid to him in exchange for his release.

With respect to ratification, in *American Multi–Cinema v. Talayna's N.W.*, 848 S.W.2d 557, 559–60[2] (Mo.App.1993), this court stated:

> As relates to agency, "ratification" is an express or implied adoption or confirmation, with knowledge of all material matters, by one person of an act performed in his behalf by another who at that time assumed to act as his agent but lacked authority to do so. Ratification relates back and is the equivalent of authority at the commencement of the act. It is the affirmance of a contract already made. The existence of agency and the authority of the agent can be and often is implied by proof of facts, circumstances, words, acts, and conduct of the party to be charged. As applied to the agency or authority which is created or related back by means of ratification, it may be implied by any facts and circumstances from which it can be reasonably inferred that the party to be charged (with knowledge of the facts) acquiesced in and accepted the transaction as his own, or which are inconsistent with any other intention. The intent to ratify may be implied from the circumstances, and this implication may be made even though the person to be charged as principal may have had an intention not to ratify.

> As to what facts, circumstances, and conduct will justify the inference of agency, no fixed rule can be stated. There is no particular mode by which it must be established. It depends upon the situation in each individual case.

> *       *       *       *       *       *

> Probably the most certain evidence of implied ratification is the acceptance and retention of the fruits of the contract with full knowledge of the material facts of the transaction.

> *       *       *       *       *       *

> Since ratification may be established by facts and circumstances, it is sufficient to make a question for the trier of the fact if the whole sum total of the facts and circumstances justifies **the reasonable inference** that the party charged as principal accepted the transaction as his own. It is not necessary that each separate act, fact or circumstance stand on its own as proof sufficient to justify the inference.

(Emphasis original.)

■ Here, the record does not establish, for purposes of a motion for summary judgment, that appellant ratified his former attor-

ney's act of settling appellant's claim regarding the second publication. Ratification requires acceptance and retention of the fruits of the contract with full knowledge of the material facts. Here, appellant's affidavit, and that of his former attorney, state that appellant agreed to the terms of the settlement provided that it dealt solely with his claims regarding the first publication. The record indicates that appellant did not read or sign the settlement agreement, but rather was apprised of the terms by his attorney over the telephone. As such, the record does not reflect that appellant had "full knowledge of the material facts" so as to be charged with ratifying the settlement agreement as it pertains to his claims regarding the second publication.

Respondent also argues that where a party to a settlement seeks to avoid the effect of a release of claims, the party seeking to avoid must first return or tender the consideration received in connection with the release or settlement, citing *Rue v. Helmkampf,* 657 S.W.2d 76, 78[1] (Mo.App.1983). Appellant replies that he was not required to return or tender the consideration received in connection with the settlement because he does not seek to avoid the settlement of his claims regarding the first publication, and there was no settlement of his claims regarding the second publication. He asserts that "there has been no evidence that anything was resolved other than the dispute then pending before the court," i.e., his claims regarding the first publication.

In *Rue,* defendants and plaintiffs entered into a business relationship for the development of real estate. As part of the development project, the parties jointly incurred indebtedness. After financial problems developed, the parties executed a settlement agreement whereby they made mutual promises and released each other from certain claims. Subsequently, plaintiffs filed suit against defendants on claims that were released by the settlement agreement, and the trial court granted summary judgment. This court focused on whether the existence of the settlement agreement constituted a bar to plaintiff's action, noting that the settlement agreement squarely encompassed the issues

within plaintiffs' petition and noting that neither side contended that plaintiffs' claims were outside the purview of the settlement agreement. *Rue,* at 78. We held that summary judgment on plaintiffs' suit was proper because plaintiffs had failed to tender back the benefits they received under the settlement agreement. *Id.,* at 80[4]. *See also, Meisel v. Mueller,* 261 S.W.2d 526, 534[9–13] (Mo.App.1953) (It is necessary for party to offer to return consideration before he can escape the binding force of a release.)

■ Here, the situation is substantially different. Appellant is not attempting to avoid the effect of a release, as was the case in *Rue* and *Meisel,* but rather is contending that since his former attorney had no authority to bind him in a release of his claims regarding the second publication, there is no release as to the second publication. As previously noted, the affidavits filed in opposition to respondent's motion for summary judgment show that there is a genuine issue as to the material fact of whether appellant's former attorney had authority to bind appellant in a release of his claims regarding the second publication, and thus show that there is a genuine issue as the release of appellant's claims regarding the second publication. As such, *Rue* and *Meisel* do not control the present situation, and appellant is not required to tender back the consideration he received for the release in order to assert that the release does not cover the claims which respondent contends that it covers.

Appellant's second point is that the trial court erred in holding that an attorney in a suit can settle claims for a client that are not raised in that case. In light of our disposition of appellant's first point, his second point need not be addressed.

Since the record demonstrates that there is a genuine issue as to the material fact of whether appellant's attorney had authority to bind appellant in a release of his claims against respondent regarding the second publication, and thus whether there was such a release, the trial court erred in granting summary judgment on appellant's counterclaim. The judgment is therefore reversed

and the cause is remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

PUDLOWSKI and KAROHL, JJ., concur.