Timothy Michael **MURPHY** and Danny Steven Murphy, Co–Personal Representatives of the Estate of Danny Lee Murphy, Deceased, Plaintiffs–Respondents,

v.

**JACKSON NATIONAL LIFE INSURANCE COMPANY,** Defendant–Appellant.

No. 24589.

Missouri Court of Appeals, Southern District, Division Two.

July 17, 2002.

Motion for Rehearing and Transfer to Supreme Court Denied Aug. 1, 2002.

Application for Transfer Denied Sept. 24, 2002.

David G. Bandré, Thomas B. Snider, Bandré, Hunt & Snider, LLC, Jefferson City, for appellant.

Robert M. Sweere, Moon, Plaster & Sweere, L.L.P., Springfield, for respondents.

NANCY STEFFEN RAHMEYER, Judge.

Danny Lee Murphy ("Murphy") brought an action for damages to recover on an insurance policy issued to him by Jackson National Life Insurance Company ("Jackson National").[1] After the parties submitted cross-motions for summary judgment,

---

1. Danny Lee Murphy died on December 31, 2001, after the notice of appeal was filed. This court sustained a motion substituting Timothy Michael Murphy and Danny Steven Murphy, co-personal representatives of the estate of Danny Lee Murphy, as respondents in this case.

the trial court granted summary judgment in favor of Murphy and awarded him $75,130.17, plus interest. Jackson National appeals from the grant of summary judgment in favor of Murphy, arguing 1) that the trial court erred based on Murphy's ratification of certain payments made from the insurance policy, and 2) that the trial court failed to offset the judgment with the amount of money deposited into Murphy's joint bank account. We find that genuine issues of material fact exist and remand the cause to the trial court for further proceedings.

We review the grant of summary judgment *de novo. Deer Run Property Owners Association v. Bedell,* 52 S.W.3d 14, 16 (Mo.App. S.D.2001). We need not defer to the trial court's order granting summary judgment. *ITT Commercial Finance Corp. v. Mid–America Marine Supply,* 854 S.W.2d 371, 376 (Mo. banc 1993). The criteria for testing the propriety of summary judgment on appeal is the same as the standard that should have been employed by the trial court to determine whether to sustain the motion. *Id.* The propriety of summary judgment is purely an issue of law founded on the record submitted to the trial court. *Id.* On appeal we review the record in the light most favorable to the party against whom summary judgment was entered and allow the non-movant the benefit of all reasonable inferences. *American Family Mutual Insurance Co. v. Hoffman ex rel. Schmutzler,* 46 S.W.3d 631, 634 (Mo.App. W.D. 2001). If the trial court's judgment does not specify the basis upon which it granted summary judgment, we will uphold the decision if it was appropriate under any theory. *Deer Run,* 52 S.W.3d at 17.

■ "The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question." *ITT,* 854 S.W.2d at 380. Rule 74.04(c)(1)[2] sets forth the requirements for motions for summary judgment: "Motions for summary judgment shall state with particularity in separately numbered paragraphs each material fact as to which the movant claims there is no genuine issue, with specific references to the pleadings, discovery or affidavits that demonstrate the lack of a genuine issue as to such facts." A genuine issue exists where the record contains competent materials that show "two plausible, but contradictory, accounts of the essential facts." *ITT,* 854 S.W.2d at 382. Once a movant has met the burden imposed by Rule 74.04(c), the non-movant must show by affidavit or through other documents that one or more of the material facts is genuinely disputed. *Id.* at 381. Entry of summary judgment is precluded where genuine disputes over facts might affect the outcome of the suit. *American Family,* 46 S.W.3d at 636. If the non-movant cannot contradict the showing of the movant, judgment is properly entered against the non-movant because the movant has already established a right to judgment as a matter of law. *ITT,* 854 S.W.2d at 383.

■ Where the non-movant raises affirmative defenses, the movant must also show, beyond any genuine dispute, that the defenses are legally insufficient or the non-existence of a fact essential to the defenses. *Id.* The movant "may defeat an affirmative defense by establishing that *any one* of the facts necessary to support the defense is absent." *Curnutt v. Scott Melvin Transport, Inc.,* 903 S.W.2d 184, 189–90 (Mo.App. W.D.1995).

---

**2.** All rule references are to Missouri Supreme Court Rules (2002), unless otherwise indicated.

Turning to the case at bar, on or about November 4, 1988, Jackson National issued an insurance policy to Murphy in consideration of receipt of a premium from Murphy in the amount of $62,399.19. The policy provided that if Murphy was living on the maturity date, he would receive a monthly life income annuity for 120 months. The policy also included provisions under which Murphy, as owner of the policy, could receive withdrawals of the cash surrender value of the policy prior to the maturity date.

On August 17, 1999, Murphy made a written application for "all money from my annuity policy." On August 18, 1999, Jackson National sent Murphy $14,577.92 and withheld $2,776.73 for tax purposes. These combined figures (totaling $17,354.65) represented the total amount to which Jackson National claimed Murphy was entitled pursuant to the full withdrawal provision of the policy. On January 4, 2001, Murphy's attorney demanded additional sums from Jackson National, a demand that Jackson National subsequently denied.

It is undisputed that between April 10, 1995 and April 22, 1999, sixteen withdrawal transactions were made from the policy, which included $96,232.38 in partial withdrawal payments and an additional $6,494.06 for federal and state tax withholdings. In his summary judgment motion, Murphy challenges fourteen of the sixteen transactions, alleging that none of the fourteen were made or authorized by him. Ten of the challenged fourteen transactions were partial withdrawal payments and the other four were tax withholdings.

Murphy filed a petition for damages to recover the amounts reflected in the challenged transactions. Jackson National's answer contained two affirmative defenses relating to the count of the petition at issue in this appeal.[3] In the first affirmative defense, Jackson National claimed that Murphy's action was barred under the theory of accord and satisfaction because Jackson National, over time, had forwarded to Murphy, through the partial withdrawal transactions, the entire amount to which he was entitled under the terms of said policy. The second affirmative defense states:

"By taking partial withdrawals from Jackson National ..., [Murphy] voided certain terms of the contract, those being terms entitling him to specific monetary payments of a set dollar amount. Accordingly, and due to those partial withdrawals, [Murphy] is not entitled to the amounts of return as originally set forth in the policy."

In his summary judgment motion, Murphy provided an affidavit in which he asserted that he did not authorize the challenged withdrawals or tax withholding transactions, and submitted forgery affidavits in which he claimed that, although he was the payee of the checks for the challenged partial-withdrawal payments, the endorsements were not made or authorized by him and were, thus, forgeries. In its response, Jackson National did not dispute that Murphy provided them with the forgery affidavits, but does dispute the information contained in the forgery affidavits "to the extent of any liability for payment expressed therein." Jackson National cited to the deposition testimony of Cheryl Moore, its corporate representa-

---

**3.** The petition contained two counts. Count II is not at issue on appeal and the trial court's judgment reflects that Murphy was granted leave to dismiss that count without prejudice. Thus, this opinion will only discuss issues related to the count on which Murphy was granted summary judgment.

tive, who stated that the facts and circumstances for which Jackson National should not have to pay the money already withdrawn was the written requests that had come to the company the checks that were sent in Murphy's name. Moore further stated she didn't believe that Murphy was owed anything in that he had received the benefit (of the money).

In addition, within its counter-motion for partial summary judgment, Jackson National maintains that all but one of the partial withdrawal payment checks were deposited in accounts owned jointly by Murphy and Wife. Jackson National also asserts that one check was deposited in an account titled only in Wife's name, but that the funds were used to pay joint tax debts. In his response to Jackson National's motion, Murphy admitted that while some of the challenged payments were deposited into an account on which both he and Wife had signatory authority, he denied that he received any of the proceeds or benefit therefrom. He also admitted that at least one of the challenged checks went into Wife's separate account, but denied receiving any benefit therefrom or that funds from that account were used to pay joint tax debts.

The trial court sustained Murphy's motion for summary judgment and denied Jackson National's motion for partial summary judgment. The trial court awarded Murphy $75,130.17, plus 9% interest, which reflected the amount that would have accumulated under the policy had the challenged withdrawals never occurred.

In Jackson National's first point on appeal it contends the trial court erred in granting summary judgment in favor of Murphy because Murphy ratified the partial withdrawals, thereby allowing Jackson National to deduct those amounts from the policy proceeds. Murphy argues that Jackson National cannot raise this argument on appeal because it was not presented to the trial court and that Jackson National's representative disavowed any ratification defense. We disagree, and find that Jackson National may raise the issue of ratification on appeal.

■ Under Rule 55.08, in a responsive pleading, "a party shall set forth all applicable affirmative defenses and avoidances." Ratification, although not among the examples listed in Rule 55.08, is considered an affirmative defense. *See Guirl v. Guirl*, 708 S.W.2d 239, 243 (Mo.App. E.D.1986). Murphy characterizes Jackson National's theory on appeal as actually being one of payment, which is listed as an affirmative defense in Rule 55.08. Because all affirmative defenses must be specifically pled in responsive pleadings, they may not be raised for the first time on appeal. *Lamont v. Lamont*, 922 S.W.2d 81, 85 n. 1 (Mo.App. W.D.1996).

■ Although Jackson National's pleadings are not a model of clarity, we find that Jackson National factually pled in its answer that either the contract had been honored because it had been paid, or that by taking partial withdrawals, Murphy was not entitled to the original amounts of return as stated in the contract. Furthermore, it is clear from Jackson National's summary judgment motion and its response to Murphy's summary judgment motion that Jackson National contended that Murphy was not entitled to the money because he received it by the partial withdrawals. Ratification was sufficiently pled.

■ Murphy also argues that Jackson National "expressly disavowed any ratification defense" in the deposition of Cheryl Moore, the designated corporate representative. Excerpts of Moore's deposition are attached to Murphy's summary judgment motion. Murphy's allegation on appeal misconstrues Moore's testimony in that

the excerpts do not reveal any express waiver of the theory of ratification.

The full excerpt to which Murphy points is as follows:

Q. All right. Ratified means that after the fact he learned of the facts and then said, okay. Do you agree with that—

A. Okay.

Q.—as a simple definition of ratification?

A. All right.

Q. Do you understand what I'm talking about?

A. All right.

Q. Do we—is Jackson National claiming that there was any after-the-fact ratification of any of these alleged unauthorized withdrawals?

A. No.

Counsel for Jackson National later objects on the basis that the question calls for a legal conclusion, stating, "It's not her call what's going to be brought up at trial and what's not." Moore later stated she did not believe that Murphy was owed anything in that he had received the benefit of the withdrawals. This testimony as a whole, when taken in context, does not support Murphy's assertion that Jackson National disavowed a ratification defense. Moore accepted counsel's simple definition of ratification. Murphy's simple definition is not the legal definition of ratification.

▣▣ Ratification, in contract law, has been defined as an act that conforms an otherwise voidable contract into one that is valid and enforceable. *Springfield Land and Development Co. v. Bass,* 48 S.W.3d 620, 628 (Mo.App. S.D.2001). Ratification is distinguished from the concept of estoppel, which involves the inducement of someone to act to his detriment. *Id.* Es-

sentially, ratification "is confirmation after conduct." *Id.* Ratification need not be intentional. *See Clear v. Missouri Coordinating Board for Higher Education,* 23 S.W.3d 896, 901 (Mo.App. E.D.2000). It can occur when an individual either expressly or impliedly "confirms or adopts the agreement with knowledge of its contents." *Id.* In an agency situation, ratification occurs when person A confirms or adopts the conduct of person B, who acted on behalf of person A in absence of person A's authority. *Springfield Land,* 48 S.W.3d at 628. In addition, it is essential "that the principal have full knowledge of all the material facts at the time he is charged with having accepted the transaction as his own." *Molasky Enterprises, Inc. v. Carps, Inc.,* 615 S.W.2d 83, 89 (Mo.App. E.D.1981). Thus, knowledge is an essential element of ratification.

▣ The issue before us is whether Murphy is entitled to judgment as a matter of law. We find that he is not, as there is a disputed factual issue that must be decided to determine whether Jackson National's defenses of ratification and offset could be successful. Murphy did not show that Jackson National's theory of ratification is legally insufficient. Murphy's theory is that his wife was responsible for the partial withdrawals. Jackson National argues that even if Murphy's wife made the written requests for the challenged partial withdrawals and subsequently forged Murphy's endorsement, Murphy ratified her actions. Part of Jackson National's argument is statutory based. Under § 362.470,[4] "[w]hen a deposit is made by any person in the name of the depositor ... as joint tenants ..., the deposit ... shall become the property of these persons as joint tenants." We are not willing to say that, as a matter of law, the simple fact

---

4. All references to statutes are to RSMo 2000, unless otherwise indicated.

of being a joint tenant on the bank account automatically results in a finding that Murphy had knowledge of the deposits of the partial withdrawals. More specific facts as to Murphy's knowledge are necessary.

■ It is true that "the most certain evidence of implied ratification is the acceptance and retention of the fruits of the contract with full knowledge of the material facts of the transaction." *Wilks v. Stone*, 339 S.W.2d 590, 595–96 (Mo.App. 1960). The facts supporting this theory are disputed. At best, Murphy admitted that *some* of the challenged withdrawal payments were deposited into a joint account, even though he claims that he received no benefit from those funds. There is a factual dispute whether Murphy had knowledge of the fact that substantial sums of money were being placed in his joint account on a regular basis.

Because the partial withdrawal payments were sent based on requests purportedly from Murphy as owner of the policy and all but one of those payments were deposited into a joint account held by Murphy and Wife, the issue is whether Murphy had knowledge of those deposits at some point such that it would be unfair for him to now deny that he received no benefit of those payments. Nowhere in any of the motions for summary judgment or responses are facts alleged concerning Murphy's specific knowledge of any of the funds sent prior to his request for a full withdrawal. On appeal the parties point out many legal theories by which that knowledge could have been proven or disproven, but nowhere does either party address facts which would apply those theories directly to Murphy. Murphy failed to show that the essential fact of his knowl-

edge did not exist so that Jackson National's theory of ratification could be defeated as a matter of law. Thus, it was error to grant Murphy's motion for summary judgment. Because Murphy's knowledge is not addressed at all, a material issue of fact remains and summary judgment is inappropriate.

■ Reviewing the record in the light most favorable to Jackson National and giving all reasonable inferences to Jackson National, we find Jackson National sufficiently raised the issue of whether Murphy had ratified or otherwise paid the policy in question. Murphy failed to show that a necessary fact essential to this defense was lacking. We further find that there are material issues of fact that make the granting of summary judgment inappropriate because Murphy's knowledge is not part of the summary judgment pleadings.[5]

Jackson National's second point on appeal is that the trial court erred in granting summary judgment in favor of Murphy and awarding him $75,130.17 plus interest because that judgment failed to subtract the amount of payments already received by Murphy. Because of our analysis regarding Murphy's knowledge, we decline to enter judgment as a matter of law for Murphy.

We reverse the grant of summary judgement and remand for further proceedings consistent with this opinion.

PREWITT, J., and PARRISH, J., concur.

**5.** In its request for relief, Jackson National requests that we grant their motion for summary judgment. Denial of a motion for summary judgment does not present an appeal-

able issue. *Ferguson v. Wozniak Industries, Inc.*, 931 S.W.2d 919, 923 (Mo.App. S.D. 1996).