Ernest BLAND, Plaintiff,

v.

IMCO RECYCLING, INC., Defendant–Appellant,

Metal Mark, Inc., Defendant,

and

American Guarantee & Liability Insurance Company, Surety–Respondent.

No. 25403.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 19, 2003.

NANCY STEFFEN RAHMEYER, Chief Judge.

On February 25, 2000, a jury returned a $4 million-dollar verdict in favor of Ernest Bland ("Plaintiff") against IMCO Recycling, Inc. ("IMCO") and Metal Mark, Inc. ("Metal Mark"), jointly and severally. American Guarantee & Liability Insurance Company ("Surety"), as surety, then posted a supersedeas bond in the amount of $4,550,000. On January 30, 2002, this court affirmed judgment against IMCO while reversing as to Metal Mark. *See Bland v. IMCO*, 67 S.W.3d 673. (Mo.App. S.D.2002). When IMCO subsequently refused to pay the judgment, Surety paid the sum of $3,575,016.78 and sought judgment against IMCO in order to recover the amount paid. The trial court entered summary judgment in Surety's favor and IMCO now appeals. We are compelled to reverse and remand for further proceedings; however, due to the procedural complexities of this case, we deem it prudent to set forth the factual background before we discuss the legal analysis and reasoning which necessitate reversal.

Surety is a wholly-owned subsidiary of Zurich American Insurance Company ("Insurer"), the company that insured one of the original defendants, Metal Mark.[1] Immediately following the jury verdict, King Sidwell ("Sidwell"), who represented both IMCO and Metal Mark throughout the trial, sent a letter to Insurer which stated: "I need for you to get your heads together to determine which insurance carrier will post the bond or how you may be contributing to the securing of an insurance bond for supersedeas." Apparently,[2] prior to any response or the posting of a superse-

Joseph C. Blanton, Jr., Blanton, Rice, Sidwell, Nickell & Cozean, L.L.C., and Richard C. Wuestling, IV, Wuestling & James, Sikeston, for appellant.

Larry David Fields and Bradley J. Baumgart, Shughart Thomson & Kilroy, Kansas City, for respondent.

1. In its response to Point I, Surety states that "Imco's primary insurer obtained a bond from American Guarantee." Inasmuch as there is no page citation to that statement, it is unclear as to whether Insurer insured Metal Mark, IMCO, or both parties.

2. We say "apparently" because little discovery was allowed and none of the attorneys or corporate officials were deposed.

deas bond, Lawrence B. Grebel ("Grebel") of Brown & James, P.C., undertook representation of IMCO and Metal Mark. Sidwell filed Grebel's entry of appearance on behalf of IMCO and Metal Mark. Bart Zuckerman ("Zuckerman"), another member of the Brown & James firm, filed a Joint Application for Setting Appeal Bond on behalf of IMCO and Metal Mark, which was granted by the trial court with the bond set at $4,550,000. Only the attorney for the Plaintiff was served with a copy of the application, and the application was never signed by Sidwell.

Zuckerman filed the bond issued by Surety with the trial court. Although it lists Metal Mark and IMCO as the principals on the bond, the only signature on the bond is that of Patrick F. Evans ("Attorney in Fact"), who signed as attorney in fact for Surety. Only the attorney for the Plaintiff received a copy of the bond.

After this court reversed the judgment against Metal Mark but affirmed against IMCO,[3] the trial court entered its judgment in favor of Plaintiff. Plaintiff received a partial payment from Insurer, but IMCO subsequently refused to pay the balance. Plaintiff then filed a Motion for Judgment Against Surety on Appeal Bond and the trial court held a hearing on the motion. The entire docket entry on the motion hearing states: "Plaintiff appears by attorney, J Michael Ponder. Defendant appears by attorney, Thomas Ward.

**3.** *See Bland,* 67 S.W.3d at 685.

**4.** Despite this entry on the docket sheet, the record contains no clear indication as to whether the trial court entered judgment on the bond against IMCO, Surety, or both parties. The trial court alludes to the judgment on the bond in its signed Satisfaction of Judgment by stating that "[o]n February 28, 2002, the Circuit Court of Scott County entered Judgment against the bond issued by [Surety]." Additionally, the record contains a fax from the court clerk in which she states that

Plaintiff's motion taken up. Witness sworn, evidence adduced. Court finds that defendant IMCO has refused to pay amount ordered as judgment in this case. Bond to allow credit for amounts previously paid."[4] Surety paid $3,575,016.78 to Plaintiffs and subsequently filed suit pursuant to § 433.070[5] against IMCO to recover that amount. IMCO served its First Interrogatories and First Request for Production of Documents on Surety; however, Surety objected to both discovery requests. IMCO then filed a Motion to Compel Discovery Responses but, approximately one week later, Surety filed its Motion for Summary Judgment. Before the court ruled on the Motion for Summary Judgment, Surety filed an Additional Response in Support of its Motion for Summary Judgment on October 23, 2002, along with an affidavit from Grebel. Grebel stated in his affidavit that:

2. IMCO/Metal Mark understood that post-trial motions would be filed and authorized the filing of the same.

3. IMCO/Metal Mark understood that an appeal would be taken and authorized the same.

4. IMCO and Metal Mark wanted protection from execution of judgment by Plaintiff during the appeal.

5. IMCO and Metal Mark knew that to prevent execution, a bond would be required and that it would need to be filed with the Court.

"[t]here is no written, formal judgment against [Surety] on the bond." Regardless, in the case before us, although neither IMCO nor Surety disputes that a judgment on the bond was entered against Surety; we note that a judgment against the principal debtor and Surety is a prerequisite to proceeding under RSMo § 433.070.

**5.** All references to statutes are to RSMo 2000, unless otherwise indicated.

6. I had authority from IMCO to obtain and post the bond.

Thereafter, on October 30, 2002, IMCO filed its Motion to Strike allegations concerning the authority of Grebel with an affidavit by Jeffrey S. Mecom ("Mecom"), the in-house legal counsel to IMCO, in which Mecom alleged that:

2. Attorney [Grebel] was contacted by [Insurer] after the jury verdict without the consent of IMCO or Metal Mark.

3. There were never any other discussions between [Insurer], which ultimately posted the supersedeas bond through [Surety], and [IMCO] or Metal Mark relating to the actual posting of the bond, any Indemnity Agreements relating thereto, or in the manner in which the bond would be collateralized.

4. [IMCO] never authorized [Attorney in Fact] for [Surety], or any other person, to sign the supersedeas bond on its behalf. IMCO never signed the bond, never consented to the posting of the bond as principal, was not asked and never agreed to be the principal on the bond, never signed an Indemnity Agreement, and never collateralized the bond. IMCO was not asked to provide any financial statement for consideration by [Surety] prior to the posting of the bond.

5. [IMCO] never authorized any person or entity to file a supersedeas bond on its behalf as reflected in "Exhibit F" to [Surety's] Motion for Summary Judgment without [IMCO's] signature.

6. When the bond was actually posted, [IMCO] did not receive a copy of the [Surety] supersedeas bond.

7. There were never any discussions between [IMCO] and any person or entity associated with [Surety] or [Insurer] which in any way suggested that a supersedeas bond would be posted in the

amount of Four Million Five Hundred Fifty Thousand Dollars ($4,550,000.00) which bound [IMCO] as a principal.

On November 4, 2002, Surety filed its Renewed Motion for Summary Judgment, which included the Grebel Affidavit and a motion to shorten IMCO's time to respond to the Renewed Motion for Summary Judgment. On November 14, 2002, the trial court allowed IMCO thirty extra days to respond to Surety's Renewed Motion for Summary Judgment; however, it overruled IMCO's Motion to Compel Discovery Responses and did not allow IMCO to take the deposition of Grebel. On December 12, 2002, the court granted Summary Judgment to Surety for the sum of $3,839,468.28. This appeal follows, in which IMCO brings four points on appeal.

First, IMCO contends that the trial court erred in granting Surety's Motion for Summary Judgment pursuant to § 433.070 because IMCO did not execute or place its seal on the bond and, IMCO argues, this failure to execute the bond makes it null and void. Second, IMCO argues that the trial court's grant of summary judgment was inappropriate and should not stand because there are genuine issues of material fact as to whether IMCO was a principal on the bond. Third, IMCO alleges error in the trial court's refusal to permit IMCO to engage in discovery in violation of Rule 74.04,[6] while arguing that such discovery would have provided IMCO with support for its contention that it was never a principal on the bond. Finally, IMCO also claims that the trial court erred in granting summary judgment because there were unresolved issues of material fact regarding IMCO's affirmative defenses of unclean hands and equitable estoppel. More specifically, IMCO claims it should have been allowed

---

**6.** All rule references to Supreme Court Rules (2002), unless otherwise stated.

to conduct additional discovery regarding the reasons behind Surety's posting of the bond and the manner in which the bond was posted.

If IMCO was correctly found liable as a matter of law on the bond pursuant to § 433.070, then we need not discuss IMCO's second, third, and fourth points. Given the disputed facts of this case, however, we cannot, at this juncture, find that Surety is entitled to judgment against IMCO as a matter of law. Instead, we find that material issues of fact remain as to whether IMCO was the principal on the bond. The points are thus intertwined and we discuss them together.

When considering a grant of summary judgment, our standard of review is *de novo;* thus, we need not defer to the trial court's order granting summary judgment. *Murphy v. Jackson Nat'l Life Ins. Co.,* 83 S.W.3d 663, 665 (Mo.App. S.D.2002) (citing *Deer Run Prop. Owners Ass'n v. Bedell,* 52 S.W.3d 14, 16 (Mo.App. S.D.2001); *ITT Commercial Fin. Corp. v. Mid-America Marine Supply,* 854 S.W.2d 371, 376 (Mo. banc 1993)). "The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question." *Murphy,* 83 S.W.3d at 665 (citing *ITT Commercial,* 854 S.W.2d at 380). "A genuine issue of material fact exists where the *record contains* competent evidence that two plausible but contradictory accounts of essential facts exist." *Contract Freighters, Inc. v. Fisher,* 13 S.W.3d 720, 722 (Mo.App. S.D.2000). Furthermore, a claimant moving for summary judgment in the face of any affirmative defenses must also establish that the affirmative defenses fail as a matter of law. *Id.* (quoting *ITT Commercial,* 854 S.W.2d at 381). In determining whether the entry of summary judgment was appropriate, we review the record in the light most favorable to the party against whom summary judgment was entered and allow the non-movant the benefit of all reasonable inferences. *Am. Family Mut. Ins. Co. v. Hoffman ex rel. Schmutzler,* 46 S.W.3d 631, 634 (Mo.App. W.D.2001).

IMCO contends it is black-letter law that a bond not executed by the bond principal is null and void, even if the surety signs the bond, and cites *Losee v. Crawford,* 222 Mo.App. 683, 5 S.W.2d 105 (1928) in support of this proposition. In *Losee,* the plaintiff sought an injunction against the defendants pursuant to § 1957,[7] but was required by the statute to post a bond to cover any damages caused by the injunction. *Id.* at 106. The injunction was initially granted by the trial court, but then dissolved after a trial on the issues. *Id.* The defendants then sued the plaintiff on the bond for damages incurred due to the injunction. *Id.* While the defendants attempted to introduce the injunction bond into evidence, the plaintiff objected to the introduction of the bond on the grounds

---

7. Section 1957, which is no longer in effect, provided that:

> No injunction, unless on final hearing or judgment, shall issue in any case, except in suits instituted by the state in its own behalf, until the plaintiff, or some responsible person for him, shall have executed a bond with sufficient surety or sureties to the other party, in such sum as the court or judge shall deem sufficient to secure the amount or other matter to be enjoined, and all damages that may be occasioned by such injunction to the parties enjoined, or to any party interested in the subject-matter of the controversy, conditioned that the plaintiff will abide the decision which shall be made thereon, and pay all sums of money, damages and costs that shall be adjudged against him if the injunction shall be dissolved.

RSMo. § 1957 (1919). Under that statute, the only potential claim for damages was for those damages that occurred as a result of the issuance of an injunction. *Id.; see also Losee,* 5 S.W.2d at 106.

that, while the bond listed her as the principal, she had never actually signed the bond. *Id.* After sustaining the plaintiff's objection to the admission of the bond into evidence, at the close of the evidence, the court sustained a demurrer, overruled defendant's motion to assess damages on the bond, and rendered judgment in favor of plaintiff.

Here, IMCO argues that, just as in *Losee,* there is no recitation in the bond that Surety signed or executed the bond for or on behalf of IMCO, the named principal. Instead, the bond merely names IMCO as a principal on the bond and recites that Attorney in Fact, the only party who actually signed the bond, is attorney in fact for Surety, not IMCO. IMCO also points to Appeal Bond Form No. 9, Civil Procedure Forms, Missouri Rules of Court (2002) for further support for the proposition that the signature and seal of the bond principal is required.[8]

Due to the significant procedural differences between *Losee* and the case at bar, contrary to IMCO's argument, *Losee* does not compel a finding that IMCO is not a principal on the bond, but neither does it compel a finding that IMCO is the bond principal. First, and most importantly, the *Losee* court found it important that the case before it was brought under § 1957, which mandated that an injunction shall not issue "until the plaintiff or some responsible person for him, shall have executed a bond with sufficient surety or sureties to the other party." 5 S.W.2d at 106. Thus, the thrust of the court's analysis was whether the surety was a "responsible person as principal for the plaintiff," and ultimately the court found that the bond had not been executed by or on behalf of the

plaintiff. *Id.* The court then went on to distinguish several other cases in which a bond was held to be valid and binding despite the fact that it had not been signed by the principal. *Id.* (citing *Esselstyn v. Gold Corp.,* 69 Colo. 547, 196 P. 183 (1921); *Brown v. Melloon,* 170 Iowa 49, 152 N.W. 75 (Iowa 1915); *Smith v. Atkinson,* 18 Colo. 255, 32 P. 425 (1983)). In those cases, the court noted, the validity of the bond was upheld under the theory that the principal's liability depended on neither the creation nor the execution of the bond. *Id.* In other words, in those cases, the principal would have been liable even if no bond had been created; thus, his signature to the bond would not have increased his legal liability. *Id.*

Surety counters IMCO's argument and contends it was properly entitled to judgment as a matter of law. Surety argues that § 433.070 does not, by its terms, require that the principal sign or place its seal on the supersedeas bond. Surety further argues that, even without IMCO's signature or seal, IMCO was clearly the intended principal on the bond and, in support of this argument, cites Sidwell's letter to Insurer, requesting that Insurer obtain a bond to prevent Plaintiff from executing on the judgment during the pendency of the appeal. Surety also notes that it was Grebel, the attorney who represented both Metal Marks and IMCO on appeal, who actually filed the bond with the trial court. Finally, Surety notes that while IMCO's separate counsel appeared at the hearing for judgment against Surety, counsel failed to argue that the bond was improper or that IMCO was not the principal on the bond. Despite the facts

---

8. On its face, Form No. 9 does not explicitly require the seal and signature of the principal in order for an appeal bond to be valid; however, IMCO argues that the principal's seal and signature is an implicit requirement, inasmuch as the form provides seal and signature entries.

raised by Surety, Surety does not prevail as a matter of law.

The very face of the bond, combined with the affidavits of Grebel and Mecom, indicate that there are unresolved factual issues which must be decided by a trier of fact. Although Surety claims that Grebel's authority to act on IMCO's behalf is presumed[9] or, in the alternative, that IMCO's failure to repudiate Grebel's filing of the bond constitutes a ratification of the action, in light of the limited, conclusory, and conflicting affidavits of Grebel and Mecom, IMCO may have rebutted the presumption that Grebel had the authority to act on IMCO's behalf. *Jacobs v. Georgiou*, 922 S.W.2d 765, 770 (Mo.App. E.D.1996) (noting that the presumption of an attorney's authority is rebuttable); *Southwestern Bell Yellow Pages v. Dye*, 875 S.W.2d 557, 561–62 (Mo.App. E.D.1994) (stating that a client bears a "substantial burden" in rebutting the presumption of an attorney's authority). Furthermore, in light of the limited discovery that took place in this case before the trial court's grant of summary judgement, the subsequent alleged ratification of Grebel's filing of the bond has not been shown as a matter of law. At any rate, based on the record before us, the precise nature of the relationship between IMCO and Grebel is unclear. *See Sooter v. Magic Lantern, Inc.*, 771 S.W.2d 359, 363 (Mo.App. S.D.1989) (holding that the existence of the agency relationship is for the trier of fact to determine). It may

be that after further discovery, IMCO will be unable to rebut Surety's assertion that Grebel's had authority to post the bond for IMCO or, in the alternative, that IMCO ratified the bond as a matter of law. Based, however, on our review of the competing motions for summary judgment and the attached affidavits, the trial court could not properly have made that finding when it granted summary judgment in favor of Surety, and we are similarly unable to make that finding now.

In that regard, IMCO has successfully raised genuine issues of material fact as to whether it was in fact the principal debtor on the bond. We note that the failure to use Form No. 9 is simply one item of evidence for the trial court to consider at trial, and IMCO cannot escape liability for a debt that it may owe merely because Surety failed to file the bond in accordance with Form No. 9. IMCO, however, should have been allowed to engage in discovery in order to explore the basis for Grebel's statement that he had authority from IMCO to post the bond. The trial court may need to hear the testimony of the witnesses to determine their credibility.[10]

We find that IMCO's second and third points have merit and require a reversal.[11] The judgment for summary judgment is reversed, and the case is remanded for further discovery and proceedings consistent with this opinion.

9. In support of this contention, Surety cites *State v. Weinstein*, 411 S.W.2d 267, 272 (Mo.App.1967) (stating that, when an attorney makes a court appearance on behalf of a client, he is presumed to have the authority to make that appearance and to subsequently act on the client's behalf).

10. Again, we also make no statement as to whether, after further discovery, the court may determine that, as a matter of law, Grebel had apparent authority from IMCO to file the bond. Instead, we merely find that, based

on the record before the trial court when it ruled on Surety's summary judgment motion, Surety is not entitled to judgment at this time.

11. We do not address the remaining two points in light of our determination that the grant of summary judgment to Surety was inappropriate. On remand, the trial court will be in a better position to ascertain whether additional discovery on IMCO's affirmative defenses is warranted.

SHRUM, J., concurs in result in separate opinion.

PARRISH, J., concurs in result and concurs in separate opinion.

KENNETH W. SHRUM, Judge, concurring.

I concur in part and concur in the result. Specifically, I agree that a genuine issue of material fact exists about whether IMCO was the principal debtor on the bond; that reading the bond in conjunction with the affidavits of Grebel and Mecom shows there are unresolved factual issues that must be decided by a trier of fact; and as a consequence, reversal of the summary judgment for Surety is mandated.

I write separately to emphasize that, aside from the factual issue about whether IMCO was the principal debtor on the bond, Surety cannot invoke the summary remedy provided by section 433.070 unless a judgment was entered for Ernest Bland against Surety. *See Wilkerson v. Sampson,* 56 Mo.App. 276, 280 (Mo.App.1894) (holding summary remedy provided by section 8351, RSMo 1889 cannot be invoked, except in cases where there has been a judgment rendered against the surety).[1] See also *Hammons v. Ehney,* 924 S.W.2d 843, 846 (Mo.banc 1996) (citing *Wilkerson,* 56 Mo.App. 276, as part of an analysis of legal versus equitable contribution principles). As stated in n. 4 of the principal opinion, a judgment for Bland against Surety appears nowhere in this record. Although the possible absence of such a judgment was not raised on appeal, it is an issue that should be addressed on remand.

---

**1.** Section 8351, RSMo 1889 is identical to section 433.070, RSMo 2000.