CITY OF KIMBERLING CITY,
A Municipal Corporation,
Plaintiff–Appellant,

v.

LEO JOURNAGAN CONSTRUCTION
COMPANY, INC., Defendant–
Respondent.

No. SD 30611.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 14, 2011.

Motion for Rehearing or Transfer
Denied March 8, 2011.

Application for Transfer Denied
May 31, 2011.

waived its claim under the Contract Documents[1] by accepting the work and making final payment to Journagan. The trial court granted summary judgment to Journagan and the City appeals. We find Journagan is not entitled to judgment as a matter of law; we reverse and remand.

### Interpretation of the Contract

"The interpretation and construction of a contract are questions of law, which we review *de novo* and without deference to the trial court's construction." *Stahlhuth v. SSM Healthcare of St. Louis,* 289 S.W.3d 662, 670 (Mo.App. E.D.2009); *Monsanto Co. v. Syngenta Seeds, Inc.,* 226 S.W.3d 227, 230 (Mo.App. E.D.2007). In order to ascertain whether Journagan was entitled to judgment as a matter of law on the Contract Documents, we first set out the relevant provisions. Journagan relies upon paragraph 14.4.:

14.4. Review of Applications for Progress Payment:

. . . .

B. Engineer's recommendation of any payment requested in an Application for Payment **will constitute a representation by Engineer to Owner,** based on Engineer's on-site observations of the Work in progress as an experienced and qualified design professional and on Engineer's review of the Application for Payment and the accompanying data and schedules that the Work has progressed to the point indicated; **that, to the best of Engineer's knowledge, information and belief, the quality of the Work is in accordance with the Contract Documents . . .;** and that Contractor is entitled to payment of the amount recommended. **However, by recommending any such payment, En-**

Richard L. Rollings, Jr., Camdenton, Jason Shaffer, Springfield, for Appellant.

Stephen R. Miller, Matthew W. Lytle, Kansas City, for Respondent.

NANCY STEFFEN RAHMEYER, Presiding Judge.

City of Kimberling City ("the City") and Leo Journagan Construction Company, Inc. ("Journagan") entered into an agreement for the construction of a sanitary sewer system ("Journagan Contract"); the City also entered into a contract with E.T. Archer Corporation ("Archer") to provide professional engineering services with regard to the system for the City ("Archer Contract"). The City brought suit against Journagan for breach of contract and breach of warranty; Journagan asserted an affirmative defense that the City had

---

1. Both parties and the trial court refer to Contract Documents as encompassing all of the supporting documents relevant to this project and relied upon for summary judgment.

gineer will not thereby be deemed to have represented that exhaustive or continuous on-site inspections have been made to check the quality or the quantity of the Work beyond the responsibilities specifically assigned to Engineer in the Contract Documents or that there may not be other matters or issues between the parties that might entitle Contractor to be paid additionally by Owner or Owner to withhold payment to Contractor, or to have represented that any examination has been made to ascertain how or for what purpose Contractor has used or intends to use the monies paid or to be paid to Contractor on account of the Contract Price, or that title to any Work, materials or equipment has passed to Owner free and clear of any Lien.

C. **Engineer's recommendation of final payment will constitute an additional representation** by Engineer to Owner that the conditions precedent to Contractor's being entitled to final payments as set forth in paragraph 14.10.A. have been fulfilled.

(our emphasis added). The City, however, relies upon paragraph 14.9.:

14.9. Contractor's Continuing Obligation:

A. **Contractor's obligation to perform and complete the Work in accordance with the Contract Documents shall be absolute. Neither recommendation of any progress or final payment by Engineer, nor the issuance of a certificate of Completion, nor any payment by Owner to Contractor un**der the Contract Documents, nor any use or occupancy of the Work or any part thereof by Owner, nor any act of acceptance by Owner nor any failure to do so, nor any review and acceptance of a Shop Drawing or sample submission,

nor the issuance of a notice of acceptability by Engineer pursuant to paragraph 14.10.A., nor any correction of defective Work by Owner **will constitute an acceptance of Work not in accordance with the Contract Documents or a release of Contractor's obligation to perform the Work in accordance with the Contract Documents (except as provided in paragraph 14.10.A.).**

14.10. Waiver of Claims:

A. The making and acceptance of final payment will constitute:

1. A waiver of all claims by Owner against Contractor except claims arising from unsettled Liens, from defective Work appearing after final inspection pursuant to paragraph 14.8.A. or from failure to comply with the Contract Documents or the terms of any special guarantees specified therein; **however, it will not constitute a waiver by Owner of any rights in respect of Contractor's continuing obligations under the Contract Documents; and**

2. A waiver of all claims by Contractor against Owner other than those previously made in writing and still unsettled.

(our emphasis added).

## Point I

▆ The trial court granted summary judgment on the City's claim for a breach of contract; it found that Archer was properly authorized as an agent for the City, Archer acted within the scope of its authority and Archer accepted all of Journagan's work, and the City waived any claims for breach of contract when it made final payment to Journagan with full knowledge of the alleged defect. Citing Article 2 of

the Journagan Contract,[2] the trial court found that "the City retained Archer 'to (a) act as the [City's] representative, and (b) assume all duties and responsibility [sic] of, and have the rights and authority assigned to, the Engineer in the Contract Documents with respect to the completion of the Work in accordance with the Contract Documents.' "

The problem with the trial court's finding is that the Archer Contract, on its face, does not bind the City for the actions of Archer. The trial court simply listed the duties that were delegated to Archer by the City to administer the Contract Documents. The trial court impermissibly inferred that the rights and duties of Archer correlated into an assignment of authority to bind the City under the Journagan Contract. By their terms, the Contract Documents spell out the duties of Archer, but the City does not give up its rights under the Contract Documents to Archer.[3] The Contract Documents, as specifically cited by the trial court, allowed Archer to give authority for "minor variations in the Work from the requirements of the Contract Documents," under paragraph 9.5.A. Archer had the "authority to disapprove or reject Work at any time during the completion of the Work, which [Archer] believe[d] to be defective," under paragraph 9.6.A. Archer was to be the "initial interpreter of the requirements of the Contract Documents and judge of the acceptability of the Work thereunder," under paragraph 9.9.A.[4] By the terms of the Contract Documents then, Archer was given authority to reject work, to make minor variations in the work, and to be the initial interpreter of the documents. These "rights" are not a waiver of any rights the City possessed. In fact, by implication, the City is the "final interpreter" of the requirements of the Contract Documents since Archer is merely the initial interpreter.

None of the provisions cited by the trial court bind the City to accept the recommendations or waive any rights the City had under the Contract Documents. In fact, the Contract Documents specifically note that "Engineer's recommendation of any payment requested in an Application for Payment will constitute a representation by Engineer to Owner ... that, to the best of Engineer's knowledge, information and belief, the quality of the Work is in accordance with the Contract Documents."[5] The City was not obligated by the very terms of the Contract Documents, which were cited by the trial court, to accept the recommendation. The representation to the third party does not provide a basis as a matter of law that Journagan had complied with the Contract Documents. Thus, it cannot be the basis for summary judgment.[6]

What the trial court failed to reconcile with the contract terms cited by Journa-

2. The trial court cited to "Ex. A–I at Art. 2" in its findings; however, Ex. A–I was the Archer Contract and Article 2, together with the corresponding language quoted, are actually both from the Journagan Contract.

3. The Archer Contract does not mention Journagan.

4. These "duties" are taken from paragraphs 9.5.A., 9.6.A., and 9.9.A., of the Contract Documents.

5. Despite the denomination by the trial court that Archer was "the City's engineer," the Journagan Contract denotes Archer simply as "the [City's] representative" and designates Archer as "the Engineer in the Contract Documents."

6. Even if there had been a statement to Journagan by Archer that the work was accepted by the City or that Journagan was released from any claims, there would remain a question of fact whether Archer was authorized as an agent to make such a claim.

gan are the terms of the duties of the contractor under paragraph 14.9.A., which is entitled "Contractor's Continuing Obligation." As we emphasized in the contract terms set out above, the contractor's obligation to perform and complete the work in accordance with the Contract Documents was "absolute." Paragraph 14.9 continued that, "[n]either recommendation of any progress or final payment by Engineer, nor the issuance of a certificate of Completion, nor any payment by Owner to Contractor under the Contract Documents, ... nor any correction of defective Work by Owner" would constitute an acceptance of work not in accordance with the Contract Documents or a release of the contractor's obligation to perform the work in accordance with the Contract Documents. Additionally, paragraph 14.10.A.1. stated that the making and acceptance of final payment would constitute a waiver of all claims by owner against contractor **except,** among others, claims from defective work appearing after final inspection pursuant to paragraph 14.8.A., or from failure to comply with the Contract Documents or the terms of any special guarantees specified therein. Making the final payment did not constitute a waiver by the City of any rights in respect to Journagan's continuing obligations under the Contract Documents. There is simply no way Journagan's claim to judgment as a matter of law under the Contract Documents comports with the terms of paragraphs 14.9. and 14.10.A.1.

### Issues of Material Fact

Summary judgment would be appropriate then only if the facts were uncontroverted that the work was done in accordance with the Contract Documents. As mandated by Rule 74.04(c), Journagan attached a statement of uncontroverted material facts to its motion for summary judgment. Rule 74.04(c)(1).[7] That rule also requires that "[t]he statement shall state with particularity in separately numbered paragraphs each material fact as to which movant claims there is no genuine issue, with specific references to the pleadings, discovery, exhibits or affidavits that demonstrate the lack of a genuine issue as to such facts." *Id.*

Our court's standard of review was stated in *Smith v. Dewitt & Associates, Inc.,* 279 S.W.3d 220 (Mo.App. S.D.2009):

In determining whether a trial court has properly granted summary judgment, we review the matter *de novo* and give no deference to the trial court's decision. *City of Springfield v. Gee,* 149 S.W.3d 609, 612 (Mo.App. S.D.2004); *Murphy v. Jackson Nat'l Life Ins. Co.,* 83 S.W.3d 663, 665 (Mo.App. S.D.2002). We employ the same criteria the trial court should have used in deciding whether to grant the motion. *Barekman v. City of Republic,* 232 S.W.3d 675, 677 (Mo.App. S.D.2007) (citing *Stormer v. Richfield Hosp. Serv., Inc.,* 60 S.W.3d 10, 12 (Mo.App. E.D.2001)).

We review the record in the light most favorable to the party against whom judgment was entered and accord the non-movant the benefit of all reasonable inferences. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). As in this case, a "defending party" may establish a right to summary judgment by showing:

"(1) facts that negate any one of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find

7. All rule references are to Missouri Court Rules (2010), unless otherwise specified.

the existence of any one of the claimant's elements, or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense." *Id.* at 381. "[A] 'genuine issue' exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *Id.* at 382.

*Id.* at 223.

Journagan relied upon the "undisputed evidence" that the work was completed in accordance with Contract Documents, first, by a letter sent to the Missouri Department of Natural Resources ("DNR") by Archer enclosing a Statement of Work Completed. In the statement, Archer

> affirm[ed] that based on periodic observations of construction and upon reports submitted by others, the wastewater facilities ... have been, to the best of [Archer's] knowledge and belief, completed substantially in accordance with plans and specifications approved by the Mo D.N.R. and Addenda No. 1 & 2 and Change Orders No. 1, 2, 3, 4 & 5 To the contract with Journagan Construction.

The statement "further affirmed that based on periodic observations of construction and upon reports submitted by others, all equipment, structures, piping and appurtenances are, to the best of [Archer's] knowledge and belief, as shown on the plans and are of the quality specified." An additional comment typed onto the form read, "This statement of work completed is for the Kimberling City sanitary sewer collection system improvements only."

As we noted above, by the contract terms, any recommendation of payment or completion was simply a recommendation to the City; it did not bind the City as a

matter of law that the work complied with the Contract Documents. It was simply "a representation ... to the best of Engineer's knowledge, information and belief" that the quality of work was in accordance with the representation made to DNR. The City did not admit that the work complied with the Contract Documents in its summary judgment response. It admitted Archer sent the letter, but not the inference that the letter constituted a fact that the work had in fact complied with the contract obligations of Journagan.[8]

The second undisputed fact proposed by Journagan as a basis for summary judgment was that the final payment to it constituted a release; Journagan relies upon paragraph 14.10.A. for that conclusion. Paragraph 14.10.A. provided that the making and acceptance of final payment would constitute "[a] waiver of all claims by Owner against Contractor **except** claims arising from ... **defective Work** appearing after final inspection pursuant to paragraph 14.8.A. or . **from failure to comply with the Contract Documents** or the terms of any special guarantees specified therein; however, **it will not constitute a waiver by Owner of any rights in respect of Contractor's continuing obligations under the Contract Documents.**" (our emphasis added). Paragraph 14.10.A. does not assist Journagan as it clearly states that the final payment does not waive claims from the failure to comply with the Contract Documents. Additionally, as noted in paragraphs 14.4.B. and C, the representation to the owner constituted only that, a representation to the owner. Significantly, the Contract Documents do not provide that such representations are binding

---

**8.** Archer left itself room in the Archer Contract to avoid a claim that it had made "exhaustive or continuous on-site inspections ..." to check the quality or the quantity" of the work assigned to the Engineer by its contract provision.

upon the City or that they provide any sort of waiver by the City of claims against Journagan. As noted above, a review of paragraph 14.9.A. indicates that the parties did not intend for Archer's representation to release Journagan or otherwise waive the City's claims that "Contractor's obligation to perform and complete the Work in accordance with the Contract Documents shall be absolute. **Neither recommendation of any progress or final payment by Engineer** ... will constitute an acceptance of Work not in accordance with the Contract Documents or a release of Contractor's obligation to perform the Work in accordance with the Contract Documents (except as provided in paragraph 14.10.A.)." (our emphasis added).

The Archer Contract indicates that the representations by Archer simply put Archer in the line of fire when it made its representations to the City concerning the workmanship. We find *Reiss & Goodness Engineers, Inc. v. City of Goodman*, 303 S.W.3d 605 (Mo.App. S.D.2010), to be instructive. In *Reiss*, both Reiss & Goodness Engineers and Lynnson were sued for a breach of contract and both were found liable under the contract.

> [T]he City [of Goodman] retained Reiss & Goodness as the architect and engineer on a project to replace its dilapidated water distribution system, and awarded a contract to Lynnson to complete the project. As architect and engineer, Reiss & Goodness provided the plans and specifications for the project, which called for the installation of new water lines and accoutrements. According to the plans, Lynnson was to install new main lines, service mains, service lines, meter boxes, fire hydrants, and valves for purging the water system.
>
> Reiss & Goodness was charged with interpreting the intent of plans and overseeing construction. An inspector from Reiss & Goodness, Maurice Clark, was to monitor construction to ensure that it met the specifications and acceptable engineering practice standards. Under the contract, Lynnson was to be "held strictly to the intent of the contract documents in regard to the quality of materials, workmanship, and execution of the work." From the outset of the project, complaints arose about the quality of workmanship, depths of the mains, lines and meters, and general cleanup. Throughout the construction period, Lynnson submitted monthly pay estimates describing the work performed and materials used, which were then reviewed and approved by Reiss & Goodness and submitted to the City for payment. Of the seventeen pay estimates, all were approved by Reiss & Goodness, and all were paid with the exception of the final payment of $92,757.83, which the City refused despite Reiss & Goodness's approval and final certification of the project.

*Id.* at 607–08. This Court held that the trial court did not err in denying Lynnson's motion for new trial as the fact that "Reiss & Goodness were charged with interpreting the contract documents, and inspecting and approving of construction, simply does not change the fact that Lynnson was obligated to complete the project according to the specifications, and that all changes in line depth were to be authorized by a written field order, which [the president of Lynnson] acknowledged in his testimony." *Id.* at 610–11. Here, too, Journagan was obligated by the Journagan Contract to perform the work in accordance with the Contract Documents. The fact that the City made the final payment does not relieve Journagan of its continuing obligation under the Contract Documents.

Lynnson also alleged that the trial court erred in denying its motions for directed verdict and for judgment notwithstanding the verdict because the project was completed in accordance with the plans and accepted by Reiss & Goodness, who had actual authority to interpret and deviate from the plans. *Id.* at 611. Lynnson argued "that no substantial evidence exists to support the finding of a breach because any deviations from the specifications were approved by Reiss & Goodness, who had the authority to interpret and change the specifications." Our court held that,

> this argument ignores the fact that changes were to be in the form of a written field order. It also ignores the fact that Reiss & Goodness were also found to have breached the contract with the City. Thus, Lynnson may not shield itself from its breach by Reiss & Goodness's breach.

*Id.* at 611.

Likewise, the City's response controverted that Journagan performed its work "per written specifications." Journagan did not show in its motion that there was no genuine issue of material fact whether it did in fact perform its work per written specifications. The City contends that the Contract Documents required 95% compaction. The City requested that Archer conduct testing at four locations to determine if the compaction complied with the Contract Documents. The testing done by Archer confirmed the City's concerns regarding "the continued sinking of numerous streets throughout the city"; the compaction at the four locations ranged from 87.1% to 93.3%. Additionally, the City contended Journagan performed trenching work in an unworkmanlike manner by not using aggregate bedding and a large majority of the material used was clay and chert and not the contractually mandated granular fill.

The City claimed the following in its response to Journagan's Motion for Summary Judgment:

- The contract specifically required any deviation from specifications to be authorized in writing.

- It is controverted that Addendum No. 2 which revised detail on Drawing No. 79 referred to the "sewer treatment plant."

- Mike Zimmerman was not the City's Engineer.

- The City informed Journagan multiple times of the unsatisfactory work being performed.

- The City informed Journagan on numerous occasions of system-wide defects and indicated that the four sites would be suitable for testing to determine if the defects extended to the whole system. Separate testing was performed on an additional twelve sites and indicated improper material on all sites.

- Journagan agreed to repair all streets that were damaged.

- It is controverted that all streets were repaired. Some locations were repaired, but many remain damaged to this day.

It is clear that a material issue of fact is controverted—whether Journagan complied with its contract with the City to construct an appropriate sanitary sewer system in accordance with the Contract Documents. The City, thus, properly disputed in its response to Journagan's Motion for Summary Judgment that the work was done in an acceptable manner.

Point I has merit. The trial court erred in granting the motion for summary judgment on Count I of the Petition.

## Point II

Count II of the City's Petition claimed that Journagan violated the parties' agreement regarding warranty work; Journagan countered that it completed the project that forms the basis of the action to the satisfaction of the City's agent, the project engineer. Journagan again claimed that the final payment waived all claims for failure to comply with the project's Contract Documents.

Journagan first argued that the City waived its claim by approving the work and making final payment. We will not address again the claim that making final payment constituted a waiver under the Contract Documents as we have addressed that in our discussion of Count I.[9] We will address the trial court findings in which it concluded that Journagan performed all the warranty work deemed appropriate and the City made no objection at the time that Journagan had failed to provide full and complete performance; and the City failed to bring any claim or dispute with respect to the warranty work to the engineer, which was a condition precedent to the bringing of any action.

### Performance of All Warranty Work

■ Journagan contended in its Statement of Uncontroverted Material Facts that at a meeting between Journagan and the City on February 13, 2003, "it was agreed that issues involving materials or workmanship that developed prior to the warranty dates established by Archer would be presented to Journagan as soon as possible, and that the City and Journagan would review these issues to determine whether they were covered under Journagan's warranty."

9.  Journagan does not argue that a different paragraph of the contract controls warranty

Consistent with that statement was an affidavit of Bryan Holt, the Senior Vice President of Journagan at all relevant times who personally oversaw Journagan's completion of warranty repairs regarding this job, which indicated the City and Journagan would review the issues to determine warranty coverage and coordinate actions mutually agreed upon, with a completion date to be determined. The affidavit stated,

3.  On February 13, 2003, I met with Mayor Gary Conway and other representatives of the [City] and identified approximately 32 warranty repairs to be completed by Journagan. The identified repairs included 23 asphalt/settlement/paving repairs.

4.  During the February 13, 2003, meeting, we also discussed the process for identifying and completing additional warranty repairs on the Project. It was agreed that issues involving materials or workmanship that developed prior to the warranty dates established by [Archer], the City's engineer for the Project, would be presented to Journagan as soon as possible, and that the City and Journagan would review these issues to determine whether they were covered under Journagan's warranty.

On February 14, 2003, Mr. Holt sent a letter to Mayor Conway confirming the agreed upon procedure. The letter stated in part,

Issues involving materials or workmanship that develop prior to March 5, 2003, or October 15, 2003[,] which are the warranty dates identified in [Archer's] letter of January 16, 2003, will be presented to Journagan as soon as possible. Journagan and [the City] will review the issues to determine warranty coverage

work.

and coordinate actions mutually agreed upon, with a completion date to be determined.

Journagan claimed that it completed the repairs that it agreed were warranty items. Journagan provided no admission in the motion for summary judgment that supports a finding that the City agreed that all of the warranty work was completed to the City's satisfaction. Journagan relies upon a letter which it sent to the City stating that the warranty work had been completed. Those statements were controverted by the City. Journagan cannot rely upon its own statement that the warranty work was completed to claim there is no issue of material fact. The trial court erred in finding there is no issue of material fact as to whether warranty work was completed.

## Condition Precedent

■ As an additional ground, the trial court found that the City was required by its contract with Journagan to present any claims against Journagan to Archer prior to making complaints to Journagan. Journagan alleges the City did not make its warranty claims to Archer, therefore, the court found the City could not exercise its rights or pursue any available remedies under the contract against Journagan. The trial court based these conclusions on provisions in paragraphs 9.9.A. and 9.9.B. of the Contract Documents. The City argues it was error for two reasons: first, that the issue was not included in the motion for summary judgment and, second, that the contract provisions did not apply to warranty issues.

Journagan included as an undisputed fact that Archer was to be "the initial interpreter of the requirements of the Contract Documents and judge of the acceptability of the Work thereunder." Journagan did not argue that the Contract

Documents thus **required** that claims or disputes be referred initially to Archer. The City states it did not address this theory in its response or suggestions because it was not raised by Journagan. We reverse the grant of summary judgment because the trial court entered summary judgment on a basis not addressed by either party and a reasonable interpretation of the Contract Documents and the statements in Journagan's Statement of Uncontroverted Material Facts suggests an interpretation consistent with there being no condition precedent to complaints concerning Journagan's warranty.

As noted, Journagan admitted that issues existed regarding whether materials and workmanship would be reviewed by the City and Journagan to determine if they were covered under Journagan's warranty. Although paragraphs 9.9.A. and 9.9.B., on their face, state that claims or disputes relating to the acceptability of the work will be referred to Archer, it is unclear whether that included warranty work. The actions of the parties certainly indicate that interpretation was not followed by the parties. A reasonable inference from the failure of paragraph 9.9.A. to mention warranty issues might be that the paragraph did not apply to warranty work. The motion for summary judgment did not address paragraphs 9.9.A. or 9.9.B. with regards to a claim for breach of warranty. The motion for summary judgment was limited to (1) the year duration of the warranty and (2) the parties February 13, 2003 agreement for addressing warranty issues. Journagan did not include the warranty provisions of the Contract Documents in its motion for summary judgment nor argue that the City was required to initially present its claim to Archer. The court addressed an issue not raised pursuant to Rule 74.04(c).

Because the Contract Documents were reasonably susceptible to two different interpretations regarding whether warranty issues must have been presented first to Archer and because the parties did not agree on that issue in the motion for summary judgment, we find in the light most favorable to the City with the benefit of all reasonable inferences, we conclude based on the record before us that the requirement for initially submitting claims and disputes to Archer did not apply to warranty issues. Point II also has merit. The court improperly granted summary judgment to Journagan on the City's claim for a breach of warranty.

The summary judgment in favor of Journagan is reversed and the matter is remanded for proceedings consistent with this opinion.

BATES and FRANCIS, JJ., concur.