Richard E. JACOBS, et al., Plaintiffs/Appellants/Cross–Respondents,

v.

George GEORGIOU, Defendant/Respondent,

and

Judy Alexander, Defendant/Respondent/Cross–Appellant.

Nos. 67629, 67845.

Missouri Court of Appeals, Eastern District, Division Four.

March 12, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 6, 1996.

Application to Transfer Denied June 25, 1996.

---

Cockriel, Horas & Radice, L.L.C., Steven M. Cockriel, St. Louis, for Appellant.

Michael A. Gross, St. Louis, for Respondent.

PUDLOWSKI, Judge.

This appeal concerns liability for breach of a commercial lease. Richard Jacobs et al. (appellants) sued respondent George Georgiou (henceforth, Georgiou) and cross-appellant Judy Alexander (Alexander), alleging that they are jointly and severally liable on a lease, which indisputably has been breached.

The trial court ruled that Alexander alone was liable for breach of the lease, and that appellants had taken reasonable measures to mitigate their damages from the breach. Appellants challenge the trial court's finding that Georgiou was not personally liable on the lease, and Alexander contests the trial court's ruling with respect to mitigation of damages.[1] The former ruling is reversed and the latter finding is affirmed.

*Facts*

Appellants, organized as a general partnership, own the Chesterfield Mall in west St. Louis County. One of appellants' tenants, Petite Concepts (Petite), found itself in financial straits in late 1988, and on November 30 of that year, filed for protection under Chapter 11 of the U.S. Bankruptcy Code in New Jersey. Soon thereafter, negotiations commenced between Petite and Georgiou for assignment and assumption of 18 of Petite's nationwide commercial leases, including its lease with appellants at Chesterfield Mall. The Sale and Purchase Agreement (the Agreement) that was executed by Petite and Georgiou on December 9, 1988 allowed Georgiou to substitute a corporate nominee for himself as the assuming lessee. Substitution under the agreement was to occur in two stages: first Georgiou was to designate his corporate nominee, and then the nominee was to execute a "counterpart agreement" substantially identical to the original one. On December 12, 1988, Georgiou incorporated Alexander for the express purpose of substituting it as his corporate nominee under the Agreement. The undisputed evidence indicates that Georgiou capitalized Alexander to the tune of $3,000,000. Although Georgiou stated in deposition testimony that he had "assigned his rights" under the Petite Purchase Agreement to Alexander, there is no evidence that Alexander ever executed the "counterpart agreement."

In a letter dated January 12, 1989, appellants acceded to Petite's assignment of the Chesterfield Mall lease "to Georgiou" subject to certain conditions, the only relevant one of

---

1. Alexander does not appeal the trial court's find-

ing that it is liable on the lease.

which is that "the premises will be operated by Georgiou, and consistent with the quality of the majority of other Georgiou stores." On January 13, Petite moved the bankruptcy court for approval of the "assumption and assignment of unexpired shopping center leases to George Georgiou." On January 27, Petite filed a motion supplementing its January 13 motion which sought an order authorizing Petite's "assignment to Judy Alexander, the nominee corporation of George Georgiou (Georgiou), of leases relating to eighteen (18) Karen Austin Petite Store locations."

On February 10, 1989, the Bankruptcy Court issued the muddled order which is the progenitor of the instant hotly-contested appeal. The order is a paradigm of confusion and internal inconsistency. The prefatory paragraph mentions Petite's January 13 and January 27 motions "for an order approving Petite's assumption and assignment to Judy Alexander." Footnote number 1 to that paragraph provides that:

> the term Leases as used in paragraphs 1 through 7 shall not apply to the following store locations: (a list of eight stores, one of which is inserted in handwriting, follows.) Each of the foregoing store locations are provided for under separate orders of this court.

The footnote then continues, in handwriting, "A letter outling (sic) the terms of the agreement with the Chesterfield Mall is attached hereto and incorporated herein." The letter attached to the order is the January 12 letter from appellants to Petite, described above. In handwriting at the bottom of that letter is written:

> The undersigned consent to the inclusion of the above conditions as included with the provisions of the order authorizing and approving assets to George Georgiou, dated February 10, 1989.

Immediately below this language appear the signatures of an attorney for Petite, an attorney for appellants, and Ben Becker, "attorney for George Georgiou." This handwritten addendum is not dated.

Paragraphs one through three of the bankruptcy court order are not relevant to this appeal. Paragraph four reads:

> The assumption of the Leases by Petite, as debtor in possession, and assignment to Georgiou [the word 'Georgiou' being scratched out and replaced with 'Judy'], pursuant to that certain purchase agreement between Petite and Georgiou [followed by the holographic insertion "or his corporate nominee"] dated December 9, 1988 (Purchase Agreement), is authorized in accordance with section 365 of the Bankruptcy Code.

Paragraph five has no bearing on this appeal. Paragraph six reads:

> Petite is hereby directed and authorized, pursuant to section 365(b) and (f) to assign the Lease to Georgiou, and upon assignment (i) the use clauses in each Lease shall be amended as necessary to permit Georgiou's [in handwriting above the word 'Georgiou's' is the word 'Judy's', though 'Georgiou's' is not crossed through] operation of a retail women's clothing store, (ii) each Lease as amended shall be deemed to be valid and binding in accordance with their respective terms by parties thereto, and (iii) pursuant to section 365(k) of the Bankruptcy Code, Petite and its estate are relieved from any liability for any breach of the Leases occurring after such assignment.

Paragraph seven then announces that "upon closing, Georgiou shall assume liability under each lease, as is set forth in Paragraph 2.6 of the Purchase Agreement." Paragraph 2.6 of the Purchase Agreement adds nothing to our inquiry, except that it refers to "Buyer," which is elsewhere defined as "George Georgiou or nominee."

### Liability on the Lease

Although neither party disputes it, we think it necessary to note at the outset that the question of which party (or parties) assumed, and became liable on, the Chesterfield Mall lease (henceforth, the lease) is determined, at least initially, by the Febru-

ary 10, 1989 order of the New Jersey Bankruptcy Court. When an unexpired lease is transferred by a party in bankruptcy proceedings, "the bankruptcy court must approve an assumption and this is only accomplished upon entry of a written court order." In the Matter of Condominium Administrative Services, 55 B.R. 792, 799 (Bkrtcy.1985). Thus, if the bankruptcy court order is plain and unambiguous as to the lease assumption arrangement which it addresses, that order is exclusively determinative.

■ Appellants assert that the bankruptcy court order unambiguously assigns the lease, and liability thereon, to Georgiou. Appellants reasoning is that the handwritten portion of footnote one to the order takes the lease outside the order proper, and that the only part of the order proper which applies to the lease is paragraph seven (wherein the bankruptcy court issues its decree), which plainly refers to assumption of liability by Georgiou alone. However, unlike the printed portion of footnote one (which does expressly except eight particular leases from the terms found in the body of the order), the handwritten portion of footnote one **incorporates** additional terms (i.e., the January 12 letter) into the order proper. Thus, the bankruptcy court order, as it concerns the lease, is comprised of both the order proper and (via footnote one) the January 12 letter.

Once this fact is digested, it becomes clear beyond cavil that the bankruptcy court order is ambiguous and inconsistent. The January 12 letter and paragraph seven of the order speak of assignment of the lease to Georgiou, while the prefatory paragraph and paragraph four speak of assignment of the lease to Alexander, and paragraph six (on its face) contemplates assumption by both Georgiou and Alexander. The trial court attempted to reconcile these inconsistencies by proclaiming the references to Georgiou to be "scrivener's error." We find this cursory disposal of the issue unsatisfactory. Not only does it entirely ignore the January 12 letter, but it states a conclusion without providing any analysis as to the essential question raised by

the order's inconsistency: whom did the bankruptcy court and the parties intend to be liable on the lease?

■ Construction of a court order is a question of law calling for the independent judgment of this court. *Estate of Ingram v. Rollins*, 864 S.W.2d 400, 402–3 (Mo.App.E.D. 1993). In construing this ambiguous judgment, our task is to ascertain the intention of the bankruptcy court in entering the order. *Woodfill v. Shelter Mutual Insurance Co.*, 878 S.W.2d 101, 103 (Mo.App.S.D.1994). It is also relevant that the bankruptcy court order was not the result of an adversarial proceeding, and as the bankruptcy judge himself noted, was in the nature of an uncontested consent decree. When interpreting a consent judgment, we endeavor to ascertain not only the intent of the court entering judgment, but the intentions of the parties. *Boillot v. Conyer*, 887 S.W.2d 761, 763–4 (Mo.App.E.D.1994). Construction of an ambiguous judgment is much like interpreting other ambiguous written instruments, in that we are required to search the entire record for clues in attempting to divine the intentions of the parties and the court. *See International Minerals & Chemical Corp. v. Avon Products, Inc.*, 889 S.W.2d 111, 116–7 (Mo. App.E.D.1994).

Georgiou's intention to avoid personal liability on the lease is illuminated clearly by the record. It is apparent that this was the concern animating the provision in the Agreement allowing Georgiou to designate a corporate nominee, and Georgiou stated in an affidavit that he did assign his rights under the Agreement to Alexander as his nominee.

The understanding of the bankruptcy court is more hazy. As mentioned above, no clear intention as to which party was to be liable on the lease is evident from the face of the bankruptcy court order. The transcript of the proceedings in the bankruptcy court is only slightly more helpful. Nineteen times during that proceeding, various lawyers (including Ben Becker, Georgiou's lawyer) and the bankruptcy judge refer to Georgiou individually. Only once is Alexan-

der mentioned, while Georgiou is referred to as an entity twice; the expressions Georgiou "on behalf of his corporate nominee" and "or his corporate nominee" appear once each. No objection or request for clarification is made by any party in the face of these various characterizations. The only firm impression imparted by the transcript is one of carelessness and obliviousness to the distinction between Georgiou and Alexander as his corporate nominee.

The indications that appellants believed they were leasing to Georgiou rather than Alexander are of a force equal to those indicating that Georgiou believed he was avoiding personal liability. The only clear manifestation of assent registered by appellants is their January 12 letter, which speaks of assignment of the lease to Georgiou and does not mention Alexander at all. It is true that appellants did not go on record in the bankruptcy court demanding that Georgiou remain liable on the lease or that he personally guaranty Alexander's performance; but this fact does not generate any clear inference, since appellants might have believed that their January 12 letter accomplished this, or that Alexander's failure to execute a counterpart agreement meant that Georgiou remained liable.

 The only document in the record which demonstrates a shared understanding as to assumption of the lease is the handwritten addendum to the January 12 letter. The language of that addendum clearly reveals that Georgiou was the party assuming the lease, and it is signed by appellants' attorney as well as Ben Becker, "as attorney for George Georgiou." This addendum would tilt the balance in favor of a finding that the parties intended Georgiou to be liable on the lease. However, Georgiou convinced the trial court that Becker ceased to represent Georgiou personally after Alexander was formed. The trial court's finding of fact as to Becker's authority cannot be sustained in its entirety, as there is no evidence that Becker ceased to represent Georgiou upon Alexander's incorporation, while there is uncontro-

verted evidence to the contrary; to wit, Becker filed his entry of appearance on behalf of Georgiou in the bankruptcy court on January 5, 1989. However, a subset of the trial court's finding on this point is sustainable, which is that Becker lacked authority to bind Georgiou personally. This court must defer to the factual findings of the trial court when they are supported by substantial evidence. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Both Georgiou and Becker himself testified that Becker lacked authority to bind Georgiou personally on the lease. A party who contends that an attorney lacked authority to bind him in a particular way bears a heavy burden. *Southwestern Bell Yellow Pages v. Dye*, 875 S.W.2d 557, 561 (Mo.App.E.D.1994). However, we are constrained to find that Georgiou has carried this burden here, since the only two witnesses with personal knowledge on the issue have testified consistently with each other.

Thus, our inquiry into the intentions of appellants, Georgiou, and the bankruptcy court regarding the meaning of the consent order as regards the issue of lease liability leaves us at equipoise. The evidence that the parties intended Georgiou to be liable is of a force roughly equivalent to that of the evidence supporting the opposite inference. The only conclusion we can draw with any certainty is that the parties did not come to a meeting of the minds on this issue. We must, therefore, resolve this appeal by invoking two alternative rules for the construction of ambiguous or inconsistent judgments.

 When a conflict exists within the text of a court order, the portion of the order wherein the court gives its imprimatur or exercises its power trumps inconsistent language appearing elsewhere in the order. *Estate of Ingram* at 403; *Woodfill* at 104. In the present case, the bankruptcy court issues its decree in the first clause of paragraph six and in paragraph seven: "Petite is hereby directed and authorized, pursuant to § 365(b) and (f) to assign the Leases to Georgiou.... Upon closing, Georgiou shall assume liability under each lease." Clearly, the decretal por-

tion of the bankruptcy court order makes Georgiou personally liable under the lease.

 Additionally, we note the established principle of contract law that any ambiguity in a written instrument should be construed against the party which drafted the ambiguous language. *Parker v. Pulitzer Publishing Co.*, 882 S.W.2d 245, 249 (Mo.App.E.D.1994). Because the bankruptcy court order in this case was uncontested, we think this principle is applicable. Becker, the attorney for Georgiou and Alexander,[2] conceded in deposition that he is responsible for the holographic interlineations found in the body of the order. Thus, the ambiguity created by these errant scribblings must be construed adversely to his client(s).

For the foregoing reasons, we reverse the trial court and hold that Georgiou assumed the lease, and became liable to appellants for breach thereof.

### *Mitigation of Damages*

Alexander, as cross-appellant, argues that the trial court erred in holding that appellants took reasonable measures to mitigate their damages resulting from breach of the lease. The trial court found that appellants' efforts were reasonable, and we affirm this determination.

 Alexander notified appellants of its default on the lease on June 10, 1992. Appellants began negotiating with The Bombay Company, one of appellants' existing tenants situated directly adjacent to Alexander's leasehold, soon thereafter; Bombay and appellants agreed to a new lease encompassing Alexander's abandoned leasehold by August 26, 1992. Bombay is the only prospective tenant with whom appellants' negotiated. The Bombay lease was for eleven years and it included a rent abatement during the first four years.

 Appellants presented substantial evidence at trial to bolster their claim that the Bombay lease represented a reasonable mitigation effort. However, we do not find it necessary to examine the sufficiency of appellants' mitigation measures, because Alexander has failed to carry the evidentiary burden which is the analytical predicate to such an examination. Failure to take reasonable steps to mitigate damages is an affirmative defense which must be proven by a breaching lessee. *MRI Northwest v. Schnucks–Twenty–Five, Inc.*, 807 S.W.2d 531, 537–38 (Mo.App.E.D.1991). When a lessee claims that its former landlord should have done something more by way of mitigation than was actually undertaken, the lessee has the burden of showing that the proposed course of action would have mitigated damages more effectively than what the landlord in fact did. *Id* at 536. Here, Alexander has presented nothing of the kind.[3]

The judgment of the trial court is reversed in part and affirmed in part.

AHRENS, P.J., and SIMON, J., concur.

**2.** Lest there be any confusion, we say again that we reject the trial court's finding that Becker did not represent Georgiou in the bankruptcy court. The only component of that finding that we sustain is that Becker lacked the authority to bind Georgiou personally on the lease.

**3.** Appellants have also timely moved this court for an order holding Georgiou and Alexander jointly and severally liable for appellants' attorneys' fees and costs incurred in bringing this appeal, as authorized by Rule 400 of the Missouri Court of Appeals, Eastern District, court rules.

Article 12, Section 7 of the lease provides that all fees and costs incurred in litigation (including appeals) involving the parties to the lease must be paid by the unsuccessful party. The trial court awarded fees and costs in the amount of $96,385.39 to appellants and this award is not challenged in this appeal. Furthermore, neither Georgiou nor Alexander has opposed appellants' motion for fees and costs incurred on appeal. In light of these facts, appellants' motion for reasonable fees and costs is granted.